# CASES

## ARGUED AND DETERMINED

#### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### WOODWARD IRON CO. v. LIMBAUGH.

(Circuit Court of Appeals, Fifth Circuit. November 1, 1921.)

#### No. 3783.

1. **Master and servant ⊂⇒284(2)—Relation of parties held question for jury.**

   In an action under Alabama Employers' Liability Act (Code 1907, § 3910) for injuries to plaintiff's hand run over by a tramcar in defendant's mine, while plaintiff, an employee of an independent contractor, was engaged in pushing the car under defendant's direction and control under agreement was independent contractor, *held*, that the question whether plaintiff was defendant's employee as to the tramming at the time of the injury was for the jury.

2. **Master and servant ⊂⇒88(1)—Employee may become third party's employee for special service.**

   A general employee may with his consent be hired by employer to a third party for some special service so as to become as to that service the employee of such third party, if, as to that service, he becomes subject to the direction and control of such third party.

3. **Master and servant ⊂⇒285(10)—Proximate cause of injuries to mine employee's hand run over by tramcar held for jury.**

   In action under Alabama Employers' Liability Act (Code 1907, § 3910) for injuries to mine employee's hand run over by loaded tramcar while car was being pushed up incline, whether defective condition of brake shoe was a proximate cause of the injury *held* for the jury.

4. **Master and servant ⊂⇒107(8)—Reasonable care required to maintain brake on tramcar.**

   Coal mine operator, having equipped tramcar with brake shoe, was liable, under Alabama Employers' Liability Act (Code 1907, § 3910), for injuries to employee caused by defective condition thereof, regardless of whether it was required in first instance to equip the car with such brake shoe, since, having equipped car therewith, it was required to use reasonable care to maintain it in a workable condition.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by J. C. Limbaugh against the Woodward Iron Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. H. Scrivner and W. H. Sadler, Jr., both of Birmingham, Ala. (Nesbit & Sadler, of Birmingham, Ala., on the brief), for plaintiff in error.

Erle Pettus, of Birmingham, Ala., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error (herein referred to as the plaintiff) against the plaintiff in error, Woodward Iron Company (herein referred to as the defendant), to recover damages for personal injuries alleged to have been sustained by the former while engaged in the discharge of his duty as an employee of the latter. Each count of the complaint which was put in issue and submitted to the jury alleged negligence for the consequences of which to its employee the defendant was responsible under the Alabama Employers' Liability Act. Code of Ala. of 1907, § 3910.

The plaintiff while pushing a loaded tramcar in a coal mine of the defendant stumbled and, after, in trying to regain his balance, holding on to the car while it moved a distance which there was evidence tending to prove was 8 or 10 feet, fell, and in doing so placed his hand on the rail of the track and it was run over by a wheel of the car and injured.

[1, 2] It is contended that requested instructions to the jury to find in favor of the defendant should have been given because of the absence of any evidence tending to prove that when the plaintiff was hurt he was an employee of the defendant or acting as such. The evidence showed that the plaintiff was employed by one Waters, who, as an independent contractor, was engaged in doing work in the defendant's mine. There was evidence tending to prove that Waters, as an independent contractor, did not have charge or control of the work in which the plaintiff was engaged when he was hurt. That evidence was to the effect that the moving of the coal by tramcars was not included in the work which Waters was employed to do as an independent contractor; that the tramming was in charge of the defendant, and under its direction and control, on its track and in its cars, the operation of which was not directed by Waters; that the tramming was done by men employed by the defendant until friction arose between them and employees of Waters, whereupon it was arranged for the tramming being done by employees of Waters, the defendant paying an agreed price for that work. One who is the general employee of his employer may, with the former's consent, be hired by the latter to a third party for some special service, so as to become, as to that service, the employee of such third party, if, as to that service, he becomes subject to the direction and control of such third party. 18 Ruling Case Law, 493. The court left it to the jury to find from the evidence whether the plaintiff was or was not acting as an employee of the defendant at the time the injury complained of was sustained. There was evidence to support a finding that when the plaintiff was hurt he was acting as an employee of the defendant.

[3] The car which the plaintiff was pushing was equipped with a brake shoe, designed to be operated, for the purpose of stopping the

car or checking its speed, by inserting a brake stick between the shoe and the wheel, and then pressing down the brake stick, thereby causing friction with the wheel. When the plaintiff stumbled, Taylor Rayburn, a coemployee who was working with him in moving the car, grabbed the brake stick and tried to insert it under the brake shoe on the wheel on the right hand side, but was unable to do so because that brake shoe was in bad condition, having been mashed down so close to the wheel that the opening between it and the wheel was insufficient to permit the insertion of the stick. There was evidence tending to prove that Rayburn could and would have stopped the car in the manner attempted before the plaintiff fell if the brake shoe had not been in bad condition, and that it had been in bad condition for a long time. The evidence was such as to support a finding that the fact of the brake shoe remaining in bad condition, making it unworkable, was due to negligence chargeable against the defendant. But it is contended that the stumbling of the plaintiff was the proximate cause of his injury, and that the bad condition of the brake shoe could not properly be considered as either the sole or a contributing proximate cause of the injury complained of. In the circumstances disclosed this contention is quite analogous to one which was adversely disposed of in the case of Choctaw, Oklahoma, etc., R. R. Co. v. Holloway, 191 U. S. 334, 24 Sup. Ct. 102, 48 L. Ed. 207. Evidence in that case was to the effect that when the plaintiff, a fireman on a railroad engine which was being run backward, just before the engine collided with a horse on a trestle, was trying to escape by going out between the engine and tank, he was caught between the same and thereby injured; and that the bringing of the ends of the engine and tank close together was due to the breaking of a cast-iron connection between them, which resulted from the fact that the tender stopped when the air brakes were applied, while the engine did not stop, because the brakes on it were out of repair and could not be worked. The following is an extract from the opinion in that case:

"It is insisted, however, on the part of the defendant, that the court erred in not holding that the absence of brakes on the engine was not the proximate cause of the injury; that the presence of the horse on the trestle was the proximate cause of derailing the tender and engine; and that the company was not guilty of any negligence by reason of which the horse came upon the trestle.

"We think this claim is unfounded, and that the proximate cause of the injury within the meaning of the law was the absence of the brakes on the engine. At any rate, there was evidence which made it a question for the jury to say whether the accident would have happened if there had been brakes on the engine in good order and fit for use.

"It may be assumed that there was no negligence on the part of the defendant by reason of which the horse came upon the trestle, and that it was not, therefore, responsible for any damage of which the horse was the sole and proximate cause. We think one proximate cause of the accident was the absence of the engine brakes. The purpose of a brake is to stop the engine more promptly than can be done without it, and if there had been a brake on the engine it would, if used, have probably prevented the accident. At any rate, there was evidence to that effect. The absence of a brake which, if present, would have prevented the accident was, therefore, a proximate cause thereof. If an obstacle on the track which necessitates the using of the brake is to be regarded as the sole proximate cause of an accident which occurs only

because there was no brake on the engine, the result would be that the company would never be liable, no matter what its negligence in not providing effective brakes, so long as its own negligence did not cause the presence of the obstacle on the track. This cannot be true.

"The obstacle is one of the things which caused the necessity to use the brake, and it is the neglect of the company in not furnishing the brake which constitutes an immediate and proximate cause of the injury."

When the plaintiff was hurt, the tramcar was being pushed up a slight incline. It is suggested that the stopping devices on the car were intended for use when it was going downgrade, and that it was not contemplated that they would be resorted to when the car was being pushed upgrade. There is no merit in this suggestion. The purpose of the device in question was to stop the car whenever there was occasion or necessity to do so. The evidence as to the defective condition of the brake shoe was properly submitted to the jury.

The refusal of the court to give the following requested charge is complained of:

"There is no duty on the company to place such brake shoes on the cars as would bring them to a stop quickly enough to stop the car and prevent the injury of a person who might suddenly be on the track in front of the moving car."

[4] Whether the refusal to give that charge is or is not justifiable on another ground, it is justifiable on the ground that the case was not one which involved the inquiry whether the defendant was or was not under a duty to equip the car with the stopping appliance in question. The uncontroverted evidence showed that the car was equipped with that appliance. The defendant having supplied the stopping device in question was under a duty to use reasonable care to maintain it in a workable condition. Hunt v. Kane, 100 Fed. 256, 40 C. C. A. 372. The fact that the car was equipped with the brake shoe and with a brake stick for use in operating it amounted to an invitation to employees to use the appliances when there was occasion or necessity to stop the car or check its speed.

We conclude that there was no reversible error in any ruling complained of.

The judgment is affirmed.