**Wilbur M. WHITE et al., Plaintiffs,**

v.

**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a Corporation, Defendant.**

**Civ. A. No. 3487–N.**

United States District Court,
M. D. Alabama, N. D.
June 13, 1972.

Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., for plaintiffs.

Norman & Fitzpatrick, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

VARNER, District Judge.

This cause comes on for hearing on motions for summary judgment filed by both sides. The parties agree that there is no material issue of fact to be decided.

Plaintiffs, Liberty Mutual, as subrogee of Union Camp Corporation, and Union Camp Corporation, attempt to be reimbursed by Great American Insurance Company the sum of $60,000.00 plus $3,279.02 as attorneys' fees and general expenses paid for personal injuries and expenses for one Neely, a truck driver for Arrow Truck Lines, for disability under a general personal injury liability policy of Union Camp Corporation, said injuries proximately resulting from the negligent loading of an Arrow truck by Plaintiff Earl, as supervised by Plaintiff White, both of whom were employees of Union Camp. Arrow Truck Lines, including those loading its trucks, was insured as to general liability and as to employer's liability (including workmen's compensation) by Great American Insurance Company.

The Plaintiff Liberty Mutual takes the position that, since it paid out $38,279.02 on November 13, 1969, on behalf of Union Camp Corporation because of the negligence of its (Union's) servants or agents, White and Earl, it is subrogated to the rights of Union, to the extent of its payment, to collect from White and Earl for damages proximately caused Union by the negligence of White and Earl, and these two Plaintiffs contend that Arrow Truck Lines' insurance policies with Great American provide liability insurance "for such amounts as the insured shall become legally obligated to pay because of bodily injury sustained by any person" to White and Earl for their negligence in loading a truck of Arrow Truck Lines and that, therefore, the Defendant is responsible for damages and expenses to Union Camp and Liberty Mutual for such negligence. Plaintiff Liberty insists that White and Earl, the tortfeasors, were primarily liable for Neely's injuries, that Union Camp was vicariously and secondarily liable, and that White and Earl, allegedly insured by Great American, are liable to Liberty as subrogee of Union Camp and to Union Camp for damages proximately resulting from negligence of White and Earl.

Plaintiffs further claim that the liability of Great American may be based on either of two liability insurance policies issued by the Defendant to Arrow Truck Lines, the first being Policy No. XL432–90–01. That policy, being a policy which had been reported to the Alabama Public Service Commission as the effective policy under which Arrow Truck Lines, Inc., carried liability insurance in accordance with a report filed pursuant to the rules of that organization requiring reports of bodily injury and property damage liability insurance covering public carriers in the State of Alabama as a prerequisite to their licensing as public carriers. Plaintiff Liberty Mutual claims that this earlier policy is effective because of its recording and because of its not having been cancelled in accordance with the regulations of the Public Service Commission

of the State of Alabama [1], such regulation admittedly not having been complied with. Defendant insists that, since by its terms this policy lapsed upon issuance of the other policy, it terminated without the notice required by the regulation. Plaintiffs also contend that Arrow Truck Lines, Inc., is additionally insured by the current policy of the Defendant admittedly outstanding as to Arrow Truck Lines.

Defendant does not question that an agent is liable to his principal for damages proximately resulting to the principal for the agent's negligence. American Southern Ins. Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783, 4 A.L.R.3d 611.

The Defendant relies upon a number of specific defenses to the claim of the Plaintiffs. These defenses may generally be grouped as follows:

A. By defenses 1 through 4, the Defendant pleads a general denial.

B. By its fifth, eighth, sixteenth, and eighteenth defenses, in the aggregate, the Defendant suggests that, under both policies, coverage of injuries to employees of "the insured" are excluded from general liability as provided under the policies.[2]

C. The defenses numbered 6, 7 and 15 raise questions based on exclusions in both policies of coverage of damages for injuries proximately caused by the act of a fellow employee, the Defendant taking the position that White and Earl, whose negligence allegedly caused the personal injuries to Neely, were fellow servants of Neely in the sense that they were servants of Arrow Truck Lines, Inc., in loading the truck in question or were borrowed servants from Union Camp.

D. By its defenses 9 and 19, Defendant insists since each Great American policy has a limitation or an exclusion as to its coverage where other insurance coverage protects the insured, that coverage by Great American is either limited or excluded because of Liberty's coverage. Liberty, however, points out by Motion to Strike that its coverage was based on Union Camp's responsibility, not that of White and Earl, and that White and Earl were insured by Liberty only as to "excess coverage" which is not here material.

E. The Defendant claims by defense numbered 10 that coverage was not provided White and Earl by the "loading" clause [2] of its policy in that the truck in question was not leased or loaned to any other entity. Plaintiff Liberty, on the other hand, contends that the truck, the property of Arrow Truck Lines, Inc., was on the premises of the Union Camp Corporation for the purpose of being loaded by Union Camp personnel for the benefit of both Union Camp and Arrow Truck Lines and, in that sense, was leased or loaned to Union Camp and that, therefore, White and Earl were employees of the lessee or borrower of the truck and, therefore, damages proximately resulting from their negligence was covered by the policy in question. The parties agree that the truck driven by Neely was sent by Arrow to the premises of Union Camp for loading by Union Camp personnel in order that a consignment be delivered for Union

---

1. Rule 8, General Orders of the Public Service Commission adopted June, 1941 (revised 1957) pursuant to Alabama Code, Title 48, § 301(16).

2. A representative provision of said policies is as follows: "Each of the following is an insured under this insurance to the extent set forth below: (a) * * * (c) any * * * person while using an owned automobile * * * with the permission of the named insured, provided his * * * actual use thereof is within the scope of such permission, and with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be insured only if he is: (1) a lessee or borrower of the automobile or (2) an employee of the lessee or borrower; (d) any other person or organization but only with respect to his or its liability because of acts or omissions of the insured under * * * or (c) above."

Camp by Arrow for compensation. Permission to load is inferred, if not admitted.

F. Defenses 11, 12, 13 and 14 suggest that the Plaintiffs are barred by estoppel or by an accord and satisfaction from further pursuing this cause of action because the Plaintiffs accepted from the Defendant a release from the rights Defendant may have had under Code of Alabama, Title 26, § 312, for reimbursement of amounts the Defendant had theretofore paid Neely as workmen's compensation and thereby, in effect, settled all matters between the parties which arose from the transactions associated with the said injuries to Neely and the related insurance policies thereunto pertaining.

G. What will be said as to the other defenses will dispose of the matters raised by defense numbered 20, which reassigns as to Great American's first policy the remaining defenses pleaded to its other policy.

The parties stipulate that the facts pertinent to those defenses are the following:

Neely was injured as the proximate result of the negligence of White and Earl who were then employees of Union Camp acting within the scope of their authority as such, loading a truck owned by Arrow. Neely sued White, Earl, Union Camp, and others not pertinent hereto for said injuries, and after Union Camp had called upon the Defendant to defend White and Earl in the matter under its policies mentioned aforesaid [3] and after Great American had denied coverage and refused to furnish defense for White and Earl, Liberty Mutual, as the insurance company for Union Camp, the vicarious obligor, undertook the defense and, together with Union Camp, settled the claim of Neely for $60,000.-00 and expended the sum of $3,217.02 as attorneys' fees thereunto related and $62.00 as costs of court, making a total of $38,279.02 damages to Liberty Mutual and $25,000.00 damages to Union Camp proximately resulting from the negligence of White and Earl associated with the bodily injuries of Neely. The parties have stipulated that the cost of $63,279.02 is reasonable for settlement of the claim of Neely against White, Earl and others.

The parties have agreed that a claim was made by Neely against Great American for his said injuries under the workmen's compensation coverage of an insurance policy which it had written for Arrow Truck Lines, Inc., and that benefits of $16,000.00 for medical bills and workmen's compensation benefits of $3,373.00 were paid to Neely thereunder and $1,687.00 was paid a lawyer apparently serving Neely and Great American.

Under Alabama Code, Title 26, § 312, an insurance company, paying workmen's compensation benefits to a party injured proximately by the negligence of a third party, has a right to be subrogated to the rights of the injured party against a third party tortfeasor for such amounts as are paid as workmen's compensation benefits on behalf of the injured party. It was stipulated that Great American, having paid $3,373.00 workmen's compensation benefits on behalf of and to Neely, had a right to be

---

3. The Plaintiffs contend that the policies of Arrow Truck Lines, Inc., with Great American Insurance Company provide insurance for White and Earl under the following provisions therein contained: "II. PERSONS INSURED. Each of the following is an insured under this insurance to the extent set forth below: (a) * * * (c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is: (1) a lessee or borrower of the automobile, (2) an employee of the lessee or borrower; (d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under * * * (c) above."

subrogated to $3,373.00 of the $60,000.00 settlement paid by and on behalf of Union Camp for the benefit of Neely. Of the $63,279.02 allocated for settlement of said suit, $3,373.00 was paid to Great American in settlement of their claim for subrogation arising from payment of said workmen's compensation benefits to Neely.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Relative to Plaintiffs' contentions that both policies are in effect, this Court finds that the purpose of the requirement that cancellation of an insurance policy of a public carrier be effective only after reasonable notice to the Public Service Commission is to "give assurance to the Commission that the protection contemplated * * *" by the regulation is provided. Hurley v. Chaffee, 231 Minn. 362, 43 N.W.2d 281; T. H. Mastin & Co. v. Russell, 214 Miss. 700, 59 So.2d 321. The "protection contemplated" was that included in the policy referred to in the filing with the Public Service Commission, and the protection is for the benefit of the public. Commercial Standard Ins. Co. v. Garrett, (CCA 10) 70 F.2d 969.

> "Where statutory provisions require notice to a government agency in order to effect a cancellation of a policy, such notice must be given to effect a cancellation. * * *." Couch on Insurance Second, p. 444, ¶ 67:88, citing Lewis Machine Co. v. Aztec Lines, Inc., (CCA 7) 172 F.2d 746; Red Cab Co. v. St. Paul-Mercury Indemnity Co., (CCA 7) 98 F.2d 189, cert. den. 305 U.S. 646, 59 S.Ct. 148, 83 L.Ed. 417. See also Fidelity & Casualty Co. of N. Y. v. Jacks, 231 Ala. 354, 165 So. 242, 247, Appleman Ins. Law & Practice, § 5013.

This law is applicable whether the limitation on cancellation is defined by statute or administrative regulation. United States v. Howard, 352 U.S. 212, 77 S.Ct. 303, 1 L.Ed.2d 261. Where the insured attempts to substitute a second policy without effectively cancelling the first, the two policies are each enforceable by third parties. Lewis Machine Co. v. Aztec Lines, Inc., supra; Tri-State Casualty Co. v. Speer, 189 Okl. 191, 115 P.2d 130. This rule applies to require notice of a termination based on failure to renew a policy. Nationwide Mutual Ins. Co. v. Davis, 7 N.C.App. 152, 171 S.E.2d 601. This Court, therefore, concludes that, if either of the Great American policies in question provides coverage within the perimeter of which falls this claim, then the Plaintiffs may proceed to recover under such policy. If both policies insure White and Earl, a valid defense under each of the policies must be shown to effectively exclude the coverage sought on this claim.

■ The Court finds that White and Earl were employees of a lessee or borrower of the truck and were within the definition of "insured" set out hereinabove. The truck, at the time of the accident, was in the possession of Union Camp for purposes of loading the consignment. It is of no consequence that the carrier's compensation paid Arrow by Union may have included rent for the truck while Union was loading it or that the use of the truck by Union during loading may have been a gratis loan to Union by Arrow. Permission by Arrow to load is obvious.

■ Defendant insists that its defenses 5, 8, 16 and 18 (the "employee-workmen's compensation" exclusions) are sustained by the case of American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., (CCA 5) 248 F.2d 509. The defense is that the exclusions relieve the insurer from responsibility where the person injured is an "employee of the *insured*" or where the claim is for an "obligation for which the *insured* or any carrier *as his insurer* may be held liable under any workmen's compensation * * * or * * * similar law" (emphasis added). The availability of the defense hinges on whether, as used in these exclusions, the word "insured" refers to any insured or

to the particular insured against whom the claim is made. Neely was an employee of Arrow, one of the insureds, but not of White and Earl, the insureds against whom the claim for Neely's injuries was made.

In commenting on such a defense, United States Fire Ins. Co. v. McCormick, 286 Ala. 531, 243 So.2d 367, at 375, the Supreme Court of Alabama quoted with approval the Florida Court, Shelby Mutual Ins. Co. v. Schuitema, Fla.App., 183 So.2d 571, as follows:

"The conclusion that the insuror and the insured intended only to protect the named insured as to third parties not in the status of employees overlooks the fact that, although an insurance policy could be obtained protecting only the named insured, nevertheless, this insurance policy includes, in addition to the named insured, any person using an automobile of the named insured with his permission. * * * The effect of the severability of interests clause is to make it certain that, when a claim is asserted against one who is an insured under the policy, then that person becomes 'the insured' for the purpose of determining the insuror's obligations with respect to that claim. The exclusion as to employees of the insured is thus limited and confined to the employees of the employer against whom the claim is asserted. * * *

" * * * The opposite side of the coin is the result which we reach; that is, where the claimant is not the employee of the additional insured against whom the claim is made, then there is coverage."

It, therefore, appears that the substantially similar defenses numbered 5, 8, 16 and 18 are to no avail and should be stricken.

■■ In *American Fidelity*, supra, a driver of a public carrier insured by American was injured while employees of the consignee, insured by St. Paul-Mercury, were unloading the carrier's truck. The carrier's liabililty policy excluded coverage for injury of the carrier's employee. The court found that this exclusion denied coverage of negligence by consignee's employees causing injury to the employee and that the consignee's insurer, therefore, could not claim that consignee was omnibus insured under carrier's said policy for the purpose of having the carrier's insurance company defend a claim by the carrier's employee against the consignee's employees. This case, however, is not conclusive authority adverse to the Plaintiffs in instant case. The claim in *American Fidelity*, supra, was that the policy contained an ambiguous clause, one construction of which would provide coverage and another which would deny coverage and that ambiguities in a policy are required to be construed against the scrivener as between the parties to the policy. The Court in *American Fidelity*, supra, 248 F.2d at 513, stated that St. Paul-Mercury Indemnity Company "neither has nor acquired (by subrogation * * *) the status of a vicarious assured under American's policy," and that it was not entitled to have an ambiguity construed in its favor. In the instant case, however, Liberty Mutual claims as a vicarious assured as it claims to be subrogated to rights of White and Earl against Great American for its failure to defend White and Earl, allegedly omnibus insureds under the policy of Arrow Truck Lines with Great American. Liberty Mutual is, therefore, entitled to have ambiguities, if any, in Great American's policy construed against Great American. The rule of construction adverse to the scrivener is not necessarily obliterated by the fact that the party claiming the rule is also an insurance company. United States Fire Ins. Co. v. McCormick, supra. Construing the term "insured" for the Plaintiffs, Plaintiffs, having defended White and Earl, are subrogated to their rights against Great American for failure to defend White and Earl, if Great

American had a duty to defend them. As stated in *United States Fire*, supra:

> "Each insured has coverage except with respect to his own employees, and the unqualified word 'insured' in the employee exemption means only the person claiming coverage." 243 So.2d 367, 375.

The policy itself contains the agreement of the insurer to indemnify the *insured* "for such amounts as the insured shall become *legally obligated* to pay *because* of bodily injury of any person." The insured (White and Earl) became legally obligated to pay Union Camp's damages "because of bodily injury of any person" (Neely). The word "insured" is there used in its broader sense.

Defenses 6, 7 and 15 raise questions based on exclusion of coverage of damages by a fellow employee, the Defendant taking the position that White and Earl, whose negligence allegedly caused the personal injuries to Neely, were fellow servants of Neely in the sense that they were servants of Arrow Truck Lines, Inc., as borrowed servants from Union Camp. Arrow had no right to control White or Earl's loading operation. They were, therefore, neither borrowed servants of Arrow, Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S. Ct. 135, 77 L.Ed. 311; Woodward Iron Co. v. Limbaugh (CCA 5) 276 F. 1, nor fellow servants of Neely. The defenses cannot prevail.

The tenth defense purports to show that the negligence of White and Earl was not covered by the insurance policy of the Defendant because, it is said, under the definition of "insured" set out in footnote 2 of this opinion, the automobile was neither "leased" nor "borrowed". At the time of the accident, the truck was in the possession of Union Camp for purposes of loading the consignment. Union Camp was paying Arrow for delivery of the consignment. The truck was either leased or borrowed for the purpose of loading. The Court finds that White and Earl were employees of a lessee or borrower of the truck and were, therefore, within the coverage.

Defenses 11, 12, 13 and 14 suggest that Liberty Mutual is barred by estoppel or an accord and satisfaction from further pursuit of this cause because it took from Defendant a release from rights Defendant may have had under Alabama Code, Title 26, § 312, for reimbursement of amounts it theretofore paid Neely as workmen's compensation. The question made thereby is whether Liberty Mutual, by admitting and settling its obligation to Great American for reimbursement of workmen's compensation theretofore paid the injured employee for whom it had bodily injury liability coverage, has forfeited its rights as subrogee of its insured, Union Camp Corporation, to sue Union Camp's employees for damages to Union Camp arising from the negligence of White and Earl which also damaged Neely. It appears that, as of the time of said settlement, both Liberty Mutual and Union Camp were convinced that no coverage was afforded by the policy of Great American because no coverage was afforded by their policy for damages to employees of the Defendant insured. Neither estoppel, nor accord and satisfaction, works as against one who has been misguided by false statements of his obligor, even where those statements are innocently made. In any event, Great American gave up nothing of value in reliance on any position taken by Liberty Mutual or its insured. See 28 Am.Jur.2d, Estoppel & Waiver, § 116, p. 775; Sealy v. Lake, 243 Ala. 396, 10 So. 2d 364.

The negligence of White and Earl proximately caused damages to Neely in the form of personal injuries and to Union Camp in the form of expenses. Great American has collected premiums on policies to insure Arrow for liability associated with workmen's compensation and to insure Arrow (and White and Earl) for general liability associated with the negligence. Great American is in no position to deny its liability on both aspects of its insurance.

**1120**

## JUDGMENT

Accordingly, it is the order and judgment of this Court as follows:

(a) That Plaintiff, Union Camp Corporation, have and recover of Defendant, Great American Insurance Company of New York, a Corporation, the sum of $25,000.00 with interest from November 13, 1969; and

(b) That Plaintiff, Liberty Mutual Insurance Company, a Corporation, have and recover of Defendant, Great American Insurance Company of New York, a Corporation, the sum of $38,279.02, with interest from November 13, 1969; and

(c) That the Defendant, Great American Insurance Company of New York, pay the costs of this proceeding, for which execution may issue.