Bertram Harnett, J.
The modern trend has heen to extend the class of persons insured under standardized automobile insurance policies. This is largely to protect the public, and to facilitate indemnity to innocent victims of vehicular misuse. However, an added principle in this extension is the interest of an auto owner or user, who, for one reason or another, feels the need to protect his associates and helpers in the use of his vehicle. The public, the owner, and participants in vehicular use are seen, in principle, to be likely the beneficiaries of the auto liability insuring scope.
However, what of strangers to the vehicle? Under what circumstances can they gain advantage of being ‘ ‘ insured ’ ’ under the policy of some wholly unrelated party? When loose policy language results in an open door, who can walk in?
I. SETTING OF THE CASE
Long Island Lighting Company (popularly called LILCO in these precincts) stands at the door and seeks a declaration that it is an “ insured ’ ’ as defined in a comprehensive automobile liability insurance policy issued by the Hartford Accident and Indemnity Company to McGovern Sod Farms, Inc., a landscape gardner who owned a tractor trailer rig.
A McGovern employee, Berber W. Zirk, was electrocuted in 1968 when a loading boom on the tractor trailer, which he was driving, struck high-tension wires owned by LILCO and located on the property of Harold B. Hudson. The administrator for Zirk’s estate has sued LILCO and landowner Hudson for personal injuries and wrongful death, having apparently been barred from suing employer McGovern by the Workmen’s Compensation Law (see §§ 29, 53).
The plaintiff’s complaint premises LILCO’s liability upon faulty maintenance and safety control of the high-tension wires. *834 The parties have stipulated that the wires were maintained by LILCO and that the conduct of the tractor trailer truck was not for LILCO’.s use or benefit. LILCO was not a lessee or borrower of the tractor trailer. Significantly, it was agreed that the power for the tractor trailer came from that unit itself, and it was not connected to LILCO’s equipment for any power source.
II. THE AUTO LIABILITY 1 ‘ OMNIBUS CLAUSE ’ ’ AT ISSUE HERE
Both contenders rely on the policy language. Hartford’s “ Comprehensive Automobile Liability Insurance Coverage Part,” under section II, “ Persons Insured,” provides: “ Each of the following is an insured under this insurance to the extent •set forth below: (a) the named insured; (b) any partner or executive officer thereof, but with ¡respect to a non-owned automobile only while such automobile is being used in the business of the named insured; (c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within' the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall he an insured only if he is: (1) a lessee or borrower of the automobile, or (2) an employee of the named insured or of such lessee or borrower; (d) any other person or organisation but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above ” (emphasis supplied).
Subsections (a), (b), and (c) quite evidently refer to, as insured parties, McGovern, its officers, employees, or other persons in some way using its vehicle with permission. It is under subdivision (d) of this so-called omnibus clause that LILCO seeks the mantle of being an unnamed ‘ ‘ insured ’ ’. LILCO believes it is an “organizational” with potential liability to Zirk’s estate “ because of” McGovern’s employees’ acts or omissions in handling the truck.
III. REQUIREMENT OF SOME REASONABLE RELATIONSHIP TO VEHICLE USE TO BE AN “ INSURED ’ ’
A. ANCILLARY POLICY LANGUAGE
An insurance policy, like a contract, must be read and construed in its entirety (Murray Oil Prods. v. Royal Exch. Assur. Co., 21 N Y 2d 440; Royster Guano Co. v. Globe & Rutgers Fire Ins. Co., 252 N. Y. 75). The meaning of one clause may be sharpened by reference to another. Precisely that relation *835 exists here in Hartford’s policy between the broad omnibus clause and other integrated provisions that limit its scope (see Allstate Ins. Co. v. General Fire and Cas. Co., 348 F. Supp. 682, 685).
Under section I of the policy, the carrier agrees to pay: “ on behalf of the insured all such sums which the insured shall become obligated to pay as damages * * caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading of any automobile ” (emphasis supplied).
“ Automobile” is defined in the general policy provisions of the policy to mean a “ land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment” (emphasis in original).
The upshot of these various provisions is to link the definition of ‘ ‘ insured ’ ’ directly to some use, however construed, of the truck. An insured is someone whose liability derives from injuries caused by his permitted, condoned, or anticipated use of the truck, or his connection with such a user. (See Wachstein v. General Acc. Fire & Life Assur. Corp., 36 A D 2d 963.) The liability exposure of the insured must come about because of some occurrence emanating from his participation or sharing in the use of the vehicle. The policy, appropriately entitled, “ Comprehensive Automobile Liability Insurance,” is replete with italicized emphasis upon the ‘ ‘ insured ’ ’ and the ‘ ‘ automobile; ” it is inextricably wedded to the covered vehicle. (See Crowley’s Milk Co. v. American Mut. Liab. Ins. Co., 313 F. Supp. 502, affd. 426 F. 2d 752.)
B. ‘ ‘ LOADING ’ ’ CLAUSE INAPPLICABLE
There is a " complete loading doctrine” (sometimes applicable in determining the scope of auto liability insured coverage), which holds that reasonable activities preliminary and subsequent to loading and unloading are covered vehicle uses. (Wagman v. American Fid. & Guar. Co., 304 N. Y. 490; Kings County Trust Co. v. Tudor Constr. Corp., 28 A D 2d 853.) However, even where that doctrine is applicable, independent acts remote or unrelated to loading and unloading are not covered. (Drennan v. Great Amer. Ins. Co., 27 A D 2d 641.)
Here, the pertinent claimed faulty acts by LILCO, negligent maintenance and control of the high-tension wires, are remote and unrelated to the named insured’s loading operation, except in temporal occurrence alone. LILCO is in no way part of the *836 loading process. That both claimed acts of negligence, by LILCO and by McGovern, may have coincided in time happenstance does not establish the critical functional nexus to use and loading of the truck so as to bring LILCO’s possible contributive causation within those activities covered by McGovern’s policy: (See Herts Corp. v. Bellin, 28 A D 2d 1101, affd. 22 N Y 2d 736; Nicollet Props. v. St. Paul Mercury Ins. Co., 271 Minn. 65, 135 N. W. 2d 127.)
Finally, and conclusively as to loading, Section II (c) restricts the insured loader or unloader to a lessee, borrower, or employee of the named insured, lessee or borrower. LILCO plainly is none of these.
O. 1 ‘ BECAUSE 0E ” ?
LILCO rests its case on a broad construction of the words in section II (d), “ libility because of acts or omissions of an insured under (a), (b) or (c) above ”. It contends any organization is insured with respect to its liability occasioned because of acts or omissions of an insured. Says LILCO, in effect, “ McGovern’s employee, an insured, drove the truck into the wires, and therefore his act led in sequence to the accident and resulting claim against LILCO ”. This position is that “ but for ” McGovern’s acts there would have been no loading, no accident, no LILCO liability.
However, the court believes that there is a more circumscribed meaning to “ because of ” than merely being a sequential link in the chain of events. The words imply a relationship connecting the culpable acts of persons using the vehicle to liability of another, who then becomes an “insured”. The phrase appears to include persons or organizations held in by way of vicarious liability for derelictions of McGovern, its employees, or a consensual user of the vehicle.
B. THE PRINCIPLE OP USE RELATIONSHIP: ANALYSIS
In essence, the terms of the comprehensive liability policy protect McGovern and those with whom it has some continuing relationship, through employment, vehicle lending, or supervision, from liability arising out of vehicle operation in McGovern’s business. It protects victims of the conduct of that aggregate enterprise. There is no demonstrated intent to deem as an “ insured ” just any party whose own separate negligence, apart from the vehicle, was a contributor to an accident.
The end result under LILCO’s interpretation would be bizarre. A wholly negligent instrumentality in an accident *837 causing injury to a McGovern employee would then become an “insured” under McGovern’s own policy simply because an employee’s totally faultless act was one sequential factor out of many events leading to an accident. Every person encountering McGovern’s staff would then potentially be an “ insured ”. A negligent contractor leaving a pothole in the road, a property owner poorly lighting an area, a party who improperly marks off a hazard, would all become ‘ ‘ insured ’ ’ under LILCO’s attempted construction when the McGovern car, however innocently driven, met disaster upon their encounter. The end result is too odd to accept. 'Some rule of reason must accompany the semantic exercises.
IV. LIABILITY APPORTIONMENT DOES NOT BOLSTER LILCO’s POSITION
Finally, LILCO falls back on an ingenious twist. It argues if both it and McGovern are found to have been negligent in causing the accident, their respective liabilities as joint tortfeasors, however related, would be joint and several. (See Manufacturers Trust Co. v. Nemerov, 1 A D 2d 771; Clark v. Halstead, 276 App. Div. 17.) LILCO is then potentially exposed to the whole liability, including any portion attributable to McGovern which arose “ because of ” its “ acts or omissions ” in operating the truck. LILCO urges, this possibility brings it within the definition of “insured” in section II (d) of McGovern’s policy.
We believe that the absence of LILCO’s reasonable relationship to the subject vehicle and the separateness of its claimed negligence necessarily dispose of this argument. Beyond that, the practicalities of apportionment or collection as between presumed joint tort-feasors do not affect the substance of legal liability. The ultimate practicality here lies in third-party liability and impleader practice. LILCO can, upon proper pleading and proof, be left with a net liability only for its relative share of the damages in proportion to its own separate fault in contributing to it. (See Dole v. Dow Chem. Co., 30 N Y 2d 143; Kelly v. Long Is. Light. Co., 31 N Y 2d 25.) While its gross liability to .Zirk’s estate may conceivably extend to the full damages found on trial if its negligence is established, still it can cross and counter-claim for percentages of damages caused by others. Therefore, its net “liability” would be limited to exposure resulting from its own “ acts or omissions,” not those of the insured’s employees or any others in operating the truck. Indeed, if Zirk’s contributory negligence is estab *838 lished, LILCO will have no liability at all. (See Codling v. Paglia, 32 N Y 2d 330.) In these circumstances, LILCO ends up with no exposure for liability arising from operating or loading use of the truck and is then not an “ insured ”.
One of the issues presently left open by Dole is whether a defendant may implead the employer of an injured employee on the theory that, for example, coemployees contributed to causing the accident. The employee is barred from suing the employer by Workmen’s Compensation Law (Garcia v. Iserson, 42 A D 2d 776), but is the defendant barred from seeking Dole apportionment? (See Witzenberg v. James King & Son, N. Y. L. J., Dec. 5, 1973, p. 19, col. 5; cf. Hairston v. Broadwater, 73 Misc 2d 523; Zillman v. Meadowbrook Hosp. Co., 73 Misc 2d 726; cf. State Farm Mut. Auto. Ins. Co. v. Westlake, 74 Misc 2d 604 and Smith v. Employer’s Fire Ins. Co., 72 Misc 2d 524, with United States Fid & Guar. Co. v. Franklin, 74 Misc 2d 506.) We do not have that issue before us here, except in our positing LILCO’s remedies to avoid its becoming liable in whole judgment for “ acts or omissions ” of McGovern’s employees in operating the truck.
Even so, whichever way it goes under Dole, or how payment is enforced between joint tort-feasors, we hold that a stranger to the vehicle (such as LILCO here) with a potential for being left holding the whole collectibility bag as a joint tort-feasor, is not transformed by that possibility into an “insured” under McGovern’s policy. The tie which binds is that stranger’s part of the negligence found on trial. He becomes liable for the whole because of his own negligence, not the negligence of an insured. His own separate act activates his exposure. If workmen’s compensation blocks McGovern’s right over, or McGovern as a cojudgment-debtor becomes bankrupt, or disappears from the scene, stranger LILCO’s exposure to the whole judgment comes about by operation of law and the fortuitous merging of LILCO’s negligence with other independent occurrences. In any event, nothing in the policy reflects an intention to insure against a failure or inability to obtain equitable Dole apportionment.
Accordingly, judgment is granted in favor of defendant, upholding its affirmative defense and dismissing the complaint.