SHORES, Justice.
K & K Company of Clearwater, Inc. (K & K), a general contractor, required cast iron pipe to be used from time to time in its construction projects in Florida. It bought pipe from McWane Cast Iron Pipe Company in Birmingham (McWane). On January 10, 1972, Jerry Agent, K & K’s employee, was sent to McWane in K & K’s truck to pick up a load of pipe. Agent parked the truck at McWane’s loading dock and McWane’s employees loaded the pipe onto the trailer. After it was loaded, Agent secured the load to the flat-bed trailer and left McWane’s yard to return to Florida. During the return trip, Agent was killed in an accident which occurred near Montgomery, Alabama.
Agent’s widow and child filed suit for wrongful death against McWane and K & K, among others. The complaint alleges that McWane was negligent in loading the truck without the truck having a header board as required by rules of certain governmental agencies and in improperly loading and/or binding the load onto the flatbed. When the accident occurred, the pipe moved into the driver’s compartment and caused or contributed to Agent’s death. Pacific Indemnity Company (Pacific) is McWane’s insurer. It is defending McWane in the damage suit brought by Mrs. Agent, but is doing so under protest and after having made demand upon Sentry Insurance Company (Sentry), K & K’s insurer, to assume McWane’s defense. Sentry has refused to defend McWane.
Pacific and McWane then brought a declaratory action against Sentry seeking an order construing the policy of insurance issued by Sentry to K & K. Pacific and McWane contend that McWane is an additional insured under Sentry’s policy.
The trial court, after considering stipulated facts, exhibits, depositions and the oral testimony of an employee of McWane, issued its judgment holding that McWane was an additional insured under Sentry’s policy and that, therefore, Sentry was required to defend McWane in the death action brought by Mrs. Agent. Sentry appealed from this judgment.
Sentry’s policy, after naming K & K as the named insured, contains the following provisions:
“I. COVERAGE C — BODILY INJURY LIABILITY

“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
“C. bodily injury .

*285

“to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile. . .

II. PERSONS INSURED
“Each of the following is an insured under this insurance to the extent set forth below:
“(a) the named insured;

“(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
“(1) a lessee or borrower of the automobile, or
“(2) an employee of the named insured or of such lessee or borrower;
“(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.”
We first determine whether McWane is an additional insured under 11(c) or 11(d) of Sentry’s policy.
Clearly, by the language contained in Section I of the policy, the company (Sentry) has obligated itself to pay all sums an insured becomes obligated to pay as damages for bodily injury arising out of the use of an insured automobile and “use” includes loading or unloading an insured automobile. It is equally clear, however, that under the provisions of 11(c), the policy restricts its liability under the loading and unloading clause by the following language:
“. . . but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
“(1) a lessee or borrower of the automobile, or
“(2) an employee of the named insured or of such lessee or borrower;”
McWane contends that the loading and unloading provision contained in Section I of the Sentry policy broadens the term “use” in the policy. We agree.
In Fireman’s Fund Insurance Co. v. Canal Insurance Co., 411 F.2d 265, 268 (5th Cir.1969), the court held:
“The terms ‘loading’ and ‘unloading,’ as used in motor vehicle liability insurance policies, are not words of art. They are used to extend and expand the ordinary meaning of the word ‘use,’ and should be taken in their plain, ordinary and popular sense and given a meaning that will carry out the intent of the parties to the insurance contract.”
McWane says that although Sentry concedes that McWane was “using” K & K’s vehicle when it was loading the pipe, its insistence that coverage is afforded McWane only if McWane is a “lessee or borrower” while engaged in such loading, adds an additional requirement for one seeking coverage as a loader of the vehicle.
McWane asserts that Sentry has added an additional requirement in its policy requiring that one must qualify as a “lessee or borrower” to be covered under the policy if the injury occurs during the course of loading or unloading the insured vehicle, and says that this requirement was added to circumvent the Fireman’s Fund case. The policy involved in the Fireman’s Fund case did not contain the “lessee-borrower” requirement. That might well have been Sentry’s purpose, but the fact is that it has added this additional requirement in its policy and we are not at liberty to ignore it. The question is whether McWane was a “lessee or borrower” of the truck under the facts of this case.
Some few courts have dealt with policies containing the same or similar provisions.
*286 In Gary Safe Company v. Transport Insurance Company, 525 S.W.2d 64 (1975), the Court of Civil Appeals of Texas construed the identical provision as contained in 11(c) of the Sentry policy. In Gary, one Reynolds, an employee (driver) of Braswell Motor Freight Lines, Inc., was injured while Braswell’s truck was being unloaded by employees of the consignee and Reynolds at its destination. The shipper of the safe, Gary Safe Company, and the consignee both claimed coverage under Braswell’s policy issued by Transport. The court denied coverage saying:
“. . . Gary Safe Company [the consignee did not appeal a summary judgment entered against it] was not a lessee or borrower of the Braswell delivery truck at the time of the accident, and, therefore, was not entitled to coverage . . .” (525 S.W.2d at 67)
The Court of Appeals of New York reached a similar result in Breen v. Cunard Lines Steamship Company, Limited, 33 N.Y.2d 508, 355 N.Y.S.2d 333, 311 N.E.2d 478 (1974). In that case, Breen, a truck driver for Wooster Express, sued Cunard for injuries he sustained while unloading Wooster’s truck on Cunard’s pier. Cunard then sued Liberty Mutual Insurance Company, Wooster’s liability carrier, claiming coverage under the loading and unloading provision. The New York Court held that under the provisions of the Liberty Mutual policy, which are the same as Sentry’s, as to bodily injury or property damage sustained in the process of loading and unloading coverage for liability to others was limited to a lessee or borrower of the vehicle. The court held that Cunard was neither a lessee nor a borrower of the Wooster truck during the unloading process and, therefore, was not covered under the policy.
In the instant case, Pacific and McWane argue that White v. Great American Insurance Company of New York, 343 F.Supp. 1112 (M.D.Ala.1972), should be followed.
In White, a truck driver for Arrow Truck Lines was injured while an Arrow truck was being loaded by employees of Union Camp on Union Camp’s premises. Union Camp’s general liability insurer brought an action for reimbursement against Arrow’s insurer claiming coverage under a “loading and unloading” provision identical to the one before us. (343 F.Supp. at 1115) The court held that Union Camp was within the coverage of the “loading and unloading” provision of the Arrow policy and said simply that “. . . The truck was either leased or borrowed for the purpose of loading. . . .” (343 F.Supp. at 1119)
Although the court’s conclusion in White seems to support Pacific and McWane’s contention, that case is factually distinguishable from the one before us. There, Union Camp hired the Arrow truck for the delivery of consigned goods. The truck was delivered to Union Camp to be loaded by employees of Union Camp for delivery to Union Camp’s customer. The loading was the initial step in the delivery of the consigned goods for which Arrow was paid. Therefore, it was at least arguable that, under those facts, Union Camp was a lessee or borrower of the vehicle during the loading process.
Under the facts in the instant case, McWane cannot be considered a lessee or borrower of the K & K truck. Obviously, it is not a lessee. At least one court has defined borrower as used in this policy.
In Broome County Co-Op. Fire Ins. Co. v. Aetna Life and Casualty Company, 75 Misc.2d 587, 347 N.Y.2d 778 (1973), the Supreme Court of New York held that the “loading and unloading” limitation was applicable in a situation where a person, confined to a wheelchair, was taken in her automobile to a friend’s house and was injured when the friend attempted to pull the wheelchair up a ramp into the house. That court stated that “. . .A ‘borrower’ of an automobile has been described as one who ‘uses the car for his own business or pleasure, and not for any purpose in which the owner is interested.’ . . .” (347 N.Y.S.2d at 784) The court went on to say that “. . . the term ‘borrower’ is generally understood to mean someone who has, with the permission of the owner, possession and use of the property of another *287 for his own purposes.'' (347 N.Y.S.2d at 784)
In the instant case, McWane did not have possession of the K & K truck for its own purposes. We conclude, therefore, that McWane is not an additional insured under 11(c) of the Sentry policy.
McWane says if it is not covered under that provision of the policy it is covered under 11(d).
To qualify as an insured under 11(d), McWane’s liability must have been based on “acts or omissions” of K & K. The allegation in Shirley Agent’s complaint upon which McWane’s liability is based is as follows:
“14. Plaintiff avers that the defendants MCWANE CAST IRON PIPE COMPANY negligently loaded the said motor vehicle which JERRY DAVID AGENT was operating on the occasion made the basis of this suit in view of the fact that it contained no header boards or similar devices of sufficient strength to prevent the shifting and penetrating or crushing of the driver’s compartment located on said vehicle. Plaintiff further avers that said defendant negligently failed to have the load securely fastened or braced in such a manner as to prevent said load from shifting and penetrating or crushing driver’s compartment of said vehicle.”
There is nothing in this allegation which indicates that McWane is being charged with liability for acts or omissions of K & K or any other insured under the Sentry policy. McWane’s alleged liability is based on its own acts or omissions.
In Long Island Lighting Company v. Hartford Accident and Indemnity Company, 76 Misc.2d 832, 350 N.Y.S.2d 967 (Sup.Ct.1973), the court considered an identical policy provision. In that case, one Zirk, an employee of McGovern Sod Farms, Inc., was electrocuted when a truck he was driving came into contact with wires owned and maintained by Long Island Lighting Company (LILCO). Hartford insured McGovern under a policy containing the same language as is contained in Section 11(d) of the Sentry policy. LILCO sought to be declared an additional insured under the Hartford policy, arguing that because McGovern’s employee, an insured, drove the truck into the wires, his act led in sequence to the accident, resulting in the claim against LILCO. The court said:
“. . . the Court believes that there is a more circumscribed meaning to ‘because of’ [as used in 11(d) of the Sentry policy] than merely being a sequential link in the chain of events. The words imply a relationship connecting the culpable acts of persons using the vehicle to liability of another, who then becomes an ‘insured’. The phrase appears to include persons or organizations held in by way of vicarious liability for derelictions of McGovern, its employees, or a consensual user of the vehicle.

“The end result under Lilco’s interpretation would be bizarre. A wholly negligent instrumentality in an accident causing injury to a McGovern employee would then become an ‘insured’ under McGovern’s own policy simply because an employee’s totally faultless act was one sequential factor out of many events leading to an accident. Every person encountering McGovern’s staff would then potentially be an ‘insured’. . . . The end result is too odd to accept. . . . ” (350 N.Y.S.2d at 972)
The judgment appealed from is due to be and the same is hereby reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, FAULKNER and BEATTY, JJ., concur.