WALTER S. KOZDRANSKI Co., INC. et al., Respondents-Appellants, v. JAMESTOWN MUTUAL INSURANCE COMPANY, Appellant-Respondent, and CAROLYN S. JENSEN, as Administratrix of the Estate of WALTER M. JENSEN, Deceased, et al., Respondents.

Fourth Department, November 30, 1972.

188

*Miles, Cochrane, Grosse, Rossetti & Harper* (*Raymond T. Miles* of counsel), for appellant-respondent.

*Rice, Rice, Hustleby & Chace* (*Brownstein, Canale, Madden, Burke & Siegel,* by *John F. Canale,* of counsel), for respondents-appellants.

*Grossman & Levine* (*Stanley Grossman* of counsel), for Carolyn S. Jensen, respondent.

*Dixon, De Marie & Szymoniak* (*Anthony J. De Marie* of counsel), for Gross Plumbing & Heating Co., Inc., and another, respondents.

GOLDMAN, P. J. The defendant Jamestown Mutual Insurance Company (Jamestown) originally appealed from the entire judgment which declared that plaintiff Walter S. Kozdranski Co., Inc. (Kozdranski) was entitled to coverage under Jamestown's comprehensive general liability policy but was not covered under the automobile policies of either Jamestown or Public Service Mutual Insurance Company (Public Service). Upon the oral argument before this court, counsel for plaintiffs and Jamestown stated that the Jensen action against plaintiffs had been settled subsequent to the perfection of this appeal. It was agreed that the only issue which remains for determination by us is whether the automobile liability policy of Public Service also affords coverage to the plaintiffs for any liability on their part arising out of the accident in question.

Prior to June 15, 1971, Kozdranski contracted with the Stauffer Chemical Company (Stauffer) to supply a backhoe and truck to clean out a sludge pit on Stauffer's premises. On June 15, 1971 a backhoe owned by Kozdranski was moved to Stauffer's sludge pit, but Kozdranski had no dump truck available on that day. Therefore, arrangements were made by Kozdranski with the Gross Plumbing & Heating Co., Inc. (Gross) to supply a truck to be used at the Stauffer site to assist Kozdranski's

backhoe operator, David E. Chapman, in removing the sludge waste. While the bucket of the backhoe was being operated in the pit removing sludge, it struck a pipeline which had been constructed and was maintained by Stauffer. The breaking or dislodging of the pipe caused gaseous hydrogen chloride and silicon tetrachloride to escape and they were breathed by one Walter M. Jensen, who died from the inhalation. Jensen was a Stauffer employee and was uninvolved with the pit-cleaning operation.

Carolyn S. Jensen commenced an action against the plaintiff-respondent Kozdranski alleging that the negligent and careless operation of the backhoe caused the gases to escape and contaminate the air, causing the death of her intestate, Walter M. Jensen. Upon trial, by stipulation, David E. Chapman, the operator of the backhoe, was added as a coplaintiff. The plaintiffs brought this declaratory judgment action to determine their rights and obligations pursuant to the insurance policies issued by Jamestown and Public Service to Kozdranski and Gross respectively.

The Public Service automobile policy, which afforded coverage to the Gross dump truck, listed as a person insured '' (c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is: (1) a lessee or borrower of the automobile, or (2) an employee of the named insured or of such lessee or borrower ''.

The trial court found that the Gross vehicle '' was operated by its own employee and was not in the possession or control of the Kozdranski Company or its employees and that it was neither loaned nor borrowed by the Kozdranski Company and that therefore there is no responsibility on Public Service Mutual Insurance Company for coverage in this matter ''.

The liability of Public Service turns upon the issue of whether there was a loading and unloading situation at the time of the alleged negligence which caused Jensen's death. Jamestown contends that there was loading and unloading, that Public Service's automobile policy affords coverage to the plaintiffs, and that trial court erred in its declaration that Jamestown's comprehensive policy provided the sole coverage for the accident. On the other hand, Public Service takes the position that the liability falls upon Jamestown under its comprehensive

policy and that for various reasons, which we will discuss, Public Service's automobile policy did not cover plaintiffs Kozdranski and Chapman. The trial court further found that since the Gross dump truck was operated by its own employee and was not in the possession or under the control of Kozdranski or its employees and since it was neither loaned nor borrowed by Kozdranski, there was no responsibility on Public Service for coverage.

The leading and controlling decision in this State on the question of " loading and unloading " is *Wagman* v. *American Fid. & Cas. Co.* (304 N. Y. 490, 494). In that case the Court of Appeals adopted the broad construction given the term in the majority of jurisdictions which have passed upon this question. The principle laid down in *Wagman* " that ' loading and unloading ' embrace, not only the immediate transference of the goods to or from the vehicle, but the ' complete operation ' of transporting the goods between the vehicle and the place from or to which they are being delivered " clearly applies to the operation in the instant case. Kozdranski's operator of the backhoe removed the sludge from the pit, swung the bucket over to the Gross dump truck, which was stationed where Kozdranski's employee directed it to be, and dropped the sludge from the bucket into the truck. The loading was certainly not completed while the sludge was still being deposited in the truck. The noxious gases first appeared when the bucket of the backhoe was picking up sludge in the pit. The Gross truck was required to remain at the place it was situated until it was completely loaded. Under the circumstances the alleged negligence occurred during the loading and unloading of the Gross truck. The application of the " loading and unloading " concept until the transaction was completed, enunciated in *Wagman*, was reaffirmed in *Travelers Ins. Co.* v. *Saunders & Sons* (18 A D 2d 126, affd. 13 N Y 2d 1019) and *Lamberti* v. *Anaco Equip. Corp.* (16 A D 2d 121).

The trial court found that the truck being loaded was operated by a Gross employee and was not in the possession or control of Kozdranski or its employees. The court concluded that the truck was neither loaned to nor borrowed by Kozdranski. However, the facts do not support that conclusion.

On the day in question the vice-president and office manager of Kozdranski made arrangements with Gross for a dump truck to be present at the Stauffer site to assist Chapman in removing sludge from Stauffer's pit. Gross was to bill Kozdranski at the end of the month for the number of hours the truck and its driver were at the Stauffer site. Stauffer had no contact of

any kind with Gross, its arrangement or contract was only with Kozdranski and Stauffer apparently paid Kozdranski to remove the sludge in any way and using any equipment it thought necessary.

Plaintiff Chapman, the backhoe operator, testified that the only contact he had with the dump truck driver was in directing him so that the sludge could be loaded most effectively into the vehicle. The truck was required to remain at the place of loading until the loading had been completed and the truck was not full when the accident occurred. In *Travelers Ins. Co.* v. *Saunders & Sons* (13 N Y 2d 1019, *supra*), the converse was true, the truck was obliged to remain at the place of unloading concrete until it was completely empty. Both Chapman and the Kozdranski vice-president testified that to their knowledge the Gross truck driver had not been told where to take the sludge once the truck was fully loaded.

There was no written lease agreement between Kozdranski and Gross but nonetheless we conclude that the Gross dump truck had been leased or borrowed from Gross within the meaning of the provision of the Public Service policy. Kozdranski agreed to pay by the hour for the services of the truck and its driver. The truck was to be used only as directed by Chapman, a Kozdranski employee, since the truck's sole function was to work with the backhoe in removing the sludge. Absent any evidence that Gross was an independent contractor, it is apparent that the dump truck had been leased to or borrowed by Kozdranski, within the meaning of Coverage C, section II (c) (1) of the Public Service automobile policy.

Therefore, since Kozdranski was a " lessee or borrower " of the Gross vehicle, and since the accident arose out of the "loading or unloading " of that vehicle, the Public Service automobile policy covers the plaintiffs with respect to liability arising out of the accident.

The judgment appealed from should be reversed, and a new judgment entered declaring that the automobile policy of Public Service affords coverage to plaintiffs for the accident in question.

MARSH, MOULE and HENRY, JJ., concur.

Judgment unanimously reversed on the law without costs and judgment entered in accordance with the opinion by GOLDMAN, P. J.