**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**AMERICAN EMPLOYERS INSURANCE COMPANY et al., Appellees.**

No. 17772.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 3, 1976.

Rehearing Denied Jan. 14, 1977.

A. L. Breeland, Dallas, Brown, Herman, Scott, Dean & Miles, J. Shelby Sharpe, Fort Worth, for appellant.

Shannon, Gracey, Ratliff & Miller, and Eugene J. Dozier, Fort Worth, for appellees.

## OPINION

SPURLOCK, Justice.

Appellees, American Employers Insurance Company (American) and Homette Corporation (Homette), have brought suit seeking declaratory relief. The issue is whether the insurance policy issued by Liberty Mutual Insurance Company (Liberty), appellant, to U. S. Plywood Corporation (Plywood), a division of Champion International Corporation (Champion), also covers Homette as an insured. Suit had been filed against Homette by the widow of a Plywood truck driver who was killed when part of a load of materials he had delivered to Homette fell on him during the unloading of Plywood's truck by two employees of Homette, at Homette's place of business. They also seek a declaration that Liberty has an obligation to defend said suit.

The trial court, sitting without a jury, found that Homette was covered under the policy, and ordered, adjudged and decreed that Liberty assume the defense of Homette in the suit filed by decedent's widow, to further pay to the extent of its policy limits any judgment which may be recovered in said action, to reimburse American for all costs and expenses it incurred in the investigation and defense of said cause of action, and to pay all costs incurred in this declaratory judgment action.

Judgment modified, and as modified, affirmed.

This appeal involves the construction of a relatively new clause now appearing in automobile combination comprehensive insurance policies. This clause has been prescribed by the State Board of Insurance under the provisions of Article 5.06 of the Texas Insurance Code. It limits the liability for persons additionally insured under the terms of the omnibus clause. The Supreme Court has not yet construed this clause.

Liberty and Homette agree that the sole issue in this appeal is whether or not Homette is a "borrower" of the Plywood truck which was being unloaded by Homette.

That portion of the insurance policy here involved provides as follows:

## "PERSONS INSURED

"Each of the following is an insured under this insurance to the extent set forth below: . . .

"(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

"(1) a lessee or borrower of the automobile, or

"(2) an employee of the named insured or of such lessee or borrower; . . .."

Liberty assigns only one point of error which follows:

"The trial court erred in entering judgment that Liberty Mutual Insurance Company is obligated under its policy of insurance sold to U. S. Plywood to assume the defense and all of the expenses incident thereto of Homette Corporation in cause number 213-26869-74, styled *Carol Jean Dragoo et al. v. Homette Corporation* on the docket of the 213th District Court of Tarrant County, Texas, and to pay any judgment which may be recovered therein pursuant to said policy, since the undisputed facts and those found by the court establish as a matter of law that Homette Corporation is not an insured, named or otherwise, under the terms of the policy."

American and Homette agree that the facts stated in Liberty's brief are correct but disagree only over the interpretation of the court's Finding of Fact No. 9. Therefore, under Rule 419, T.R.C.P., the court accepts the facts detailed in Liberty's brief.

The evidence reflects that Plywood manufactures and sells a product called "Novadek," which consists of large panels of plywood.

On March 28, 1973, Billy Don Dragoo, an employee of Plywood, drove his employer's truck loaded with "Novadek" to the unloading area of Homette. The "Novadek" had been purchased by Homette from Plywood. It was the custom and practice for Plywood to deliver "Novadek" to its customer, Homette. Homette had express or implied permission to unload the plywood. Dragoo then removed from the stacks of plywood a nylon webbing that had held the plywood to the bed of the truck, and was standing beside the truck rolling up the nylon when he was fatally injured. Dragoo was not assisting in the unloading of the truck nor directing the unloading thereof. Once the unloading began Homette was using the truck for its own business and not for any purpose in which Plywood was interested.

After Dragoo had removed the tie-downs, the two employees of Homette, using a forklift, were in the process of unloading the plywood when some of it fell upon Dragoo crushing him. Dragoo was standing on the ground, opposite the side of the truck from which the forklift was being operated. The plywood had a tendency to slide if it was jostled or jarred.

The court found all the facts and concluded all the law necessary to support its judgment. Its Finding of Fact No. 9 is as follows:

"At no time during the proceedings did any employees of Homette *exercise* any control over the *movements* of Mr. Dragoo or the truck; . . . ." (Emphasis added.)

In its conclusions of law, the court determined the policy here in question had been issued and afforded coverage to U. S. Plywood and that the truck here in question being unloaded was an "owned automobile" as to Plywood, and Homette was a "borrower" and user of the truck for the purpose of unloading it. Its other conclusions are:

"3. That the death of Dragoo occurred while 'unloading' the truck, and that the 'user' was not an employee of U. S. Plywood, neither was the 'user' a 'lessee';

"4. The user at the time of the unloading was a 'borrower' within the meaning of the policy;

"5. Since the truck in question was being 'unloaded' by employees of Homette and was 'borrowed' by them for that purpose, Defendant Liberty Mutual's policy affords coverage to Homette and its employees;

"6. Defendant Liberty Mutual Insurance Company has the duty and obligation by virtue of its insurance policy to assume the defense of Homette in this cause."

The parties to this appeal agree that if in unloading the truck on its premises, Homette was either a borrower or a lessee of the truck, then Homette is an insured; otherwise, it is not. The restriction in the omnibus clause removed every unloader from coverage except those who were either lessees or borrowers of the automobile or their employees, and the named insured of a non-owned automobile.

 In construing or interpreting an insurance policy, the rule is well-established that ambiguities are to be found liberally in favor of the insured and strictly against the insurer. *Ramsay v. Maryland Am. General Ins. Co.*, 533 S.W.2d 344 (Tex.Sup., 1976); *Life Ins. Co. of North America v. Spradlin*, 526 S.W.2d 625 (Tex.Civ.App., Fort Worth, 1975, ref., n. r. e.). This is especially true in dealing with exceptions and words of limitation (*Ramsay v. Maryland Am. General Ins. Co.*, supra) or when the terms are of uncertain import or reasonably susceptible to double construction (*Life Ins. Co. of North America v. Spradlin*, supra). However, words must be given their usual and accepted meaning, absent evidence of intent to the contrary. *Pan American Insurance Co. v. Cooper Butane Co.*, 157 Tex. 102, 300

S.W.2d 651 (1957); *Fox v. Thoreson,* 398 S.W.2d 88 (Tex.Sup., 1966).

Liberty takes the position that before Homette could be a lessee or borrower it must have paid or promised to pay a consideration for the lease or loan of the truck. No separate delivery charge was made to Homette for the delivery. However, it is undisputed that by custom and usage Plywood, as a part of the consideration for the sale of the plywood to Homette, delivered its product to the plant of Homette and gave Homette permission to use the truck for the purpose of unloading it. Here the truck was stopped for unloading at a place satisfactory with Homette. The trial court impliedly found that Homette had the right to control the truck for unloading purposes even though it did not exercise its right to control the movements of Dragoo or the truck on this occasion.

We next examine the meaning of "borrower" and "lessee" and the distinction in the meaning of these two words.

In the absence of evidence to the contrary we must hold the parties to the insuring contract intended the words "borrower" and "lessee" be given their usual, ordinary, popular, and plain grammatical meaning, unless it definitely appears that the intention of the parties would thereby be defeated. *Fox v. Thoreson,* supra; *Pan American Insurance Co. v. Cooper Butane Co.,* supra; 13 Tex.Jur.2d (1960 Ed.), Contracts, Sec. 135, p. 312, Determining meaning of terms and phrases.

Black's Law Dictionary (1968 Ed.) defines a "borrower" as "He to whom a thing is lent at his request." Ballentine's Law Dictionary (1969 Ed.) defines it as "One who borrows," and defines "borrow" as "To obtain upon loan from the owner or other person having the right of disposition." Webster's Third International Dictionary (1964 Ed.) defines "borrower" as "one that borrows," and defines "borrow" as "to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender: obtain the temporary use of." The Oxford English Dictionary (1970 Ed.) defines a "borrower" as "One who takes a thing on security or on credit."

"Lessee" is defined in Black's Law Dictionary as "He to whom a lease is made. He who holds an estate by virtue of a lease." And "lease" is a "Grant of use and possession, in consideration of something to be rendered." Ballentine's Law Dictionary defines this term primarily as it applies to land, but its definition of "lease" extends to other kinds of property as well: "A contract for the possession and profits of land and tenements on the one side, and a recompense of rent or other income on the other. . . . Inclusive in modern times, of the bailment of a chattel, such as an automobile or a computer." Webster's Third International Dictionary defines "lessee" as "a bailee under bailment agreement providing a rental for personal property." A "lessee" in the Oxford English Dictionary is "A person to whom a lease is granted; a tenant under a lease." A "lease" is "A contract between parties, by which the one conveys lands or tenements to the other for life, for years, or at will, usually in consideration of rent or other periodical compensation."

The trial court found Homette was a "borrower" and not a "lessee." It follows then that cases indicating that a party in the position of Homette was not a lessee are not persuasive that such party was not a borrower.

The distinction between a borrower and a lessee in general seems to be one of compensation only. A lessee in general "borrows" something for consideration. The distinction is less clear when we realize that when one borrows money from a lending institution, he does so for a consideration. The crux of the question in this case is not whether Homette was a borrower or whether it was a lessee, but whether it was one of the two.

In the case before us the attorneys for the parties did an extraordinarily complete job of research and wrote their briefs clearly and cogently. Their research, and that of this Court, has revealed only one Texas

case in which the "borrower or lessee" clause has appeared. That is the case of *Gary Safe Company v. Transport Insurance Co.*, 525 S.W.2d 64 (Tex.Civ.App., Houston, 14th Dist., 1975, no writ hist.). In that case the facts differ substantially from those in the case before us, but the policy provisions are the same.

In that case, Gary Safe Company was the shipper of a safe which was transported by Braswell Motor Freight Lines, Inc., a common carrier. Malloy's Sweda Cash Registers, Inc. was the consignee of the safe. When the safe reached its destination, Truitt Reynolds, an employee of Braswell, was helping to unload it when it fell on him. Reynolds (who is in the position of Dragoo here, except that he was helping to unload it) sued Gary Safe Company (the shipper, not the carrier) and Malloy's Sweda Cash Registers, Inc. (Homette is in the position of Malloy's) for damages for the personal injuries he sustained. Transport Insurance Co. had issued its comprehensive liability policy to Braswell Motor Freight Lines, Inc. Both Gary Safe Company and Malloy's alleged they were insured under this policy.

In the trial court, Transport filed a motion for summary judgment against both Gary Safe Company and Malloy's. Gary Safe Company in turn filed a motion for summary judgment against Transport. Malloy's filed no motion for summary judgment. The trial court granted Transport's motion for summary judgment against Gary Safe Company and Malloy's; and it denied Gary Safe Company's motion for summary judgment. Gary Safe Company appealed, but Malloy's did not.

The Court of Civil Appeals held that Gary Safe Company was not a lessee or borrower of the truck. This was a correct holding because Gary Safe Company was merely the shipper, not the carrier, and had nothing to do with the unloading of the safe from the truck.

After disposing of the appeal by Gary Safe Company, that court (referring to the case of *White v. Great American Insurance Co. of New York*, 343 F.Supp. 1112 (M.D.—

Ala., 1972) stated: "That case might factually support the claim made by Malloy's in the trial court, since it was the consignee upon whose premises and by whose employees the safe was being unloaded at the time the accident occurred. However, Malloy's did not appeal from the summary judgment rendered by the trial court."

This is dictum, but it is clear that if the facts in the case before us had been before that court it would have held that Homette was a "borrower" and therefore was an additionally insured person. Homette is in a stronger position than Malloy's because the Homette employees were doing the exclusive unloading of the truck.

The Court in the *Gary Safe Company* case, supra, cites and analyzes four cases, as follows:

"*National Auto. & Cas. Ins. Co. v. Glens Falls Ins. Co.*, 493 S.W.2d 909 (Tex.Civ.App.—Tyler 1973, no writ), involved the construction of an insurance policy with similar language. Glens Falls had issued a policy on a truck which excluded coverage when the defendant was the owner of the premises at which the truck was being unloaded, unless the defendant was a 'bailee or borrower' of the truck. The driver of the truck was injured while the truck's cargo was being unloaded on the premises of the consignee of the cargo. The truck driver sued the consignee. The Court held that the consignee was not covered by the Glens Falls policy because it was the owner of the premises at which the truck was being unloaded when the injury occurred. Although the Court did not discuss the matter in its opinion, if the consignee had been a bailee or borrower of the truck, the exclusionary provision would not have applied and it would have been an insured under the policy.

"In *Prudhomme v. Vancouver Plywood Co.*, La.App., 240 So.2d 587 (1970), it was held that one engaged in the loading of another's truck was not a bailee or borrower of the truck so as to be an insured under the policy covering the truck.

"In *Walter S. Kozdranski Co., Inc. v. Jamestown M. Ins. Co.*, 40 A.D.2d 187, 338

N.Y.S.2d 634 (1972), aff'd mem., 34 N.Y.2d 542, 354 N.Y.S.2d 104, 309 N.E.2d 873 (1974), a declaratory judgment action was brought to determine whether, under the facts of the case, an insurer was liable under the loading and unloading provision of an automobile policy. Kozdranski contracted with the Stauffer Chemical Company to supply a backhoe and truck to clean out a sludge pit on Stauffer's premises. Kozdranski arranged with Gross Plumbing & Heating Co., Inc. for Gross to supply a truck to be used at the site to assist Kozdranski's backhoe operator, Chapman, in removing the sludge waste. An accident occurred while the backhoe was being used to remove the sludge and an employee of Stauffer, who was not engaged in the operation at the time, was killed. The employee's survivor and Chapman sued Kozdranski, and brought a declaratory judgment action to determine their rights and obligations under the insurance policies issued to Kozdranski and Gross, respectively. Under the facts of the case, the Court held that Kozdranski was a lessee or borrower of the Gross dump truck. In addition, the Court held that under the facts of the case, the alleged negligence occurred during the loading and unloading of the truck. The facts held by the Court to constitute a lessee-lessor situation were that Kozdranski paid by the hour for the services of the truck and driver, that the truck was to be used only as directed by Kozdranski's backhoe operator, and that Gross was to bill Kozdranski at the end of the month for the number of hours that the truck and driver were at Stauffer's site.

"In *White v. Great American Insurance Co. of New York*, 343 F.Supp. 1112 (M.D.—Ala. 1972), a summary judgment case, a truck driver for Arrow Truck Lines was injured during the loading of an Arrow truck by employees of Union Camp Corporation on the latter's premises. Union Camp's general liability insurer brought an action for reimbursement against Arrow's insurer claiming coverage for the Union Camp employees under the loading and unloading provision of Arrow's policy. The Court held that the Arrow truck was leased or borrowed under the policy provision. The Court said: 'At the time of the accident, the truck was in the possession of Union Camp for purposes of loading the consignment. Union Camp was paying Arrow for delivery of the consignment. The truck was either leased or borrowed for the purpose of loading.' "

In the case of *White v. Great American Insurance Co. of New York,* supra, the Alabama court stated: "The Court finds that White and Earl were employees of a lessee or borrower of the truck and were within the definition of 'insured' set out hereinabove. The truck, at the time of the accident, was in the possession of Union Camp for purposes of loading the consignment. *It is of no consequence that the carrier's compensation paid Arrow by Union may have included rent for the truck while Union was loading it or that the use of the truck by Union during loading may have been a gratis loan to Union by Arrow.* Permission by Arrow to load is obvious." (Emphasis added.)

In *Broome County Co-op. Fire Ins. Co. v. Aetna Life and Casualty Co. et al.,* 75 Misc.2d 587, 347 N.Y.S.2d 778 (Sup.Ct., 1973) the court had before it the question of whether a woman who drove another person's car under the facts in that case was a borrower of that car within the meaning of the omnibus clause of the insurance policy.

The owner of the car was crippled and could not drive or walk. Her car was specially built to allow her ingress and egress in her wheelchair. The driver was driving the car solely for the benefit of the passenger-owner. The owner was injured while being "unloaded" from the car. That court held the driver was not a lessee or borrower because she did not use the car for her own business or pleasure nor for any purpose in which she was interested. That court stated: "In common everyday language the term 'borrower' is generally understood to mean someone who has, with the permission of the owner, possession and use of the property of another for his own purposes."

We hold that the term "borrower" as applied to the facts in the case at bar

means someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes.

It follows then that Homette had, with the owner's permission, the temporary possession of the truck for unloading purposes, and is an additional insured under the policy.

That part of the judgment ordering Liberty to assume the defense of Homette in the suit filed by decedent's widow and to pay all expenses incident thereto is affirmed.

 That portion of the judgment declaring that Liberty would be obligated to pay to the extent of its policy limits any judgment that may be rendered against it in the tort action is an advisory opinion, and, as such, is prohibited by the Constitution.

Liberty did not attack the trial court's declaration of liability as being premature. Probably it did not do so because that tort action has been reduced to judgment, according to Homette's brief. However, the status of the tort action is not disclosed by the record before us.

In the state of the record, we hold that that part of the judgment that declares Liberty is obligated to pay any judgment that may be rendered against it in the tort action is fundamental error which should be raised and corrected by an appellate court on its own motion. *Central Surety & Insurance Corp. v. Anderson*, 445 S.W.2d 514 (Tex.Sup., 1969). On remand see *Central Surety & Insurance Corp. v. Anderson*, 446 S.W.2d 897 (Tex.Civ.App., Fort Worth, 1969, no writ hist.).

Accordingly, under the authority granted this Court by Rule 434, T.R.C.P., we modify the judgment of the trial court by deleting therefrom the following: ". . . and to further pay to the extent of its policy, any judgment which may be recovered in said action."

The judgment of the trial court as modified is affirmed. It is further ordered that this judgment is without prejudice to the right of appellees to bring an action against appellant for the payment of any judgment against Homette Corporation that may be rendered in Cause No. 213–26869–74 styled *Carol Jean Dragoo, et al. v. Homette Corporation.* Costs in the trial court are assessed against appellant. Costs of this appeal are assessed one-half against appellant and one-half against appellees.