Uyless McDANIELS, Plaintiff,

v.

GREAT ATLANTIC & PACIFIC TEA COMPANY, Defendant-Appellee,

Ranger Insurance Company, Intervenor-Appellant, Third Party Defendant-Cross-Appellee,

Aetna Casualty and Surety Company, Third Party Defendant-Appellee, Cross-Appellant.

No. 76–3168.

United States Court of Appeals, Fifth Circuit.

Sept. 10, 1979.

Robert H. Sarpy, Jr., G. Bruce Kuehne, New Orleans, La., for Ranger Ins.

William S. Penick, New Orleans, La., for Aetna Cas. and Great Atlantic & Pac. Tea Co.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this case we must decide whether a clause in an automobile liability policy extending coverage to persons loading or unloading the insured vehicle if they are "lessees or borrowers" of the vehicle insures one who, while having temporary possession of the vehicle, is conducting unloading operations with the consent of the named insured. The district court found that the permissive user of the truck in this case had sufficient possession of the vehicle so as to be a "borrower" within the meaning of the policy. We agree with this conclusion, and

accordingly affirm the judgment appealed from.

## I.

The accident giving rise to this lawsuit occurred on the premises of the Great Atlantic & Pacific Tea Company (A & P) in Jefferson Parish, Louisiana, while a truck owned by Gulf Atlantic Warehouse Company (Gulf) was being unloaded at A & P's warehouse. The cargo consisted of a load of large boxes of cigarettes stacked on eighteen separate pallets. On the day of the accident, Uyless McDaniels, the driver of the truck, backed up to A & P's unloading dock and A & P employees began unloading the truck.

Unloading was accomplished by the use of a small electric forklift known as a "worksaver." The A & P employee operating the forklift would drive into the truck, lift the pallet from the floor of the truck, and then back out of the truck onto the loading dock. While removing one particular pallet from the truck, the A & P employee asked McDaniels to walk behind the pallet and hold the boxes so they would not fall from the pallet as it was being removed from the truck. As the forklift backed out of the truck, the boxes on top of the load hit the wall of the truck above the back door and fell on McDaniels. As a result of the accident, McDaniels was injured.

McDaniels filed a diversity action against A & P, alleging that he sustained personal injuries in the unloading accident at A & P's warehouse. Ranger Insurance Company (Ranger), the workmen's compensation insurer of Gulf, intervened to recover benefits it had paid to McDaniels as a result of the accident. A & P then filed a cross-claim against Ranger on the grounds that A & P was an omnibus insured under the "loading and unloading" clause in Ranger's other policy issued to Gulf which was a liability policy on Gulf's truck. Ranger answered the cross-claim by denying coverage; Ranger then moved for summary

judgment, but this motion was denied by the district court.

Shortly before trial, McDaniels and A & P entered into a compromise settlement in the amount of $170,000, leaving A & P's cross-claim against Ranger as the only issue to be tried.[1] The case then proceeded to trial on A & P's cross-claim with both A & P and Ranger presenting evidence to the district judge sitting without a jury. The district judge found from the evidence that A & P was in fact an omnibus insured under Ranger's policy and that the settlement between A & P and McDaniels was reasonable. Accordingly, A & P was awarded judgment against Ranger for the full $170,000 paid to McDaniels.

Ranger then filed a third-party complaint against Aetna Casualty and Surety Company (Aetna), A & P's general liability insurer, alleging that the $170,000 should be apportioned between Ranger and Aetna according to the terms of their respective policies. In response to this third-party demand, the district court ruled that Ranger and Aetna should bear the cost of the settlement equally. Both parties now appeal.

## II.

■ Ranger's first argument on appeal is that the district court erroneously concluded that A & P was a "borrower" of Gulf's truck at the time of unloading.[2] The policy issued by Ranger provides:

II. PERSONS INSURED.

Each of the following is an insured under this insurance to the extent set forth below:

: . . . .

(c) Any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury

---

1. Other cross-claims and third-party complaints filed by the parties are not material to this appeal.

2. Both parties concede that A & P was not a "lessee" of the truck.

or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named insured or such lessee of borrower

.  .  . .

Our task is to divine the meaning of the word "borrower." Unfortunately, we receive no help in this endeavor since the term is not defined in the policy itself. Thus, we must resort to accepted rules of construction in defining this disputed term.

An omnibus clause in an insurance policy must be liberally construed to extend coverage to a permissive user. By contrast, clauses purporting to limit coverage must be strictly construed. *Travelers Indemnity Co. v. Gulf Weighing Corp.,* 352 F.Supp. 335, 344 (E.D.La.1972); *Sparkman v. Highway Insurance Co.,* 266 F.Supp. 197, 203 (W.D.La.1967); *Rachal v. Union National Life Insurance Co.,* 184 So.2d 775, 779 (La. App.3d Cir. 1966). Any doubt as to the meaning of a disputed provision must be resolved against the insurer, Ranger. *Canal Insurance Co. v. Brooks,* 201 F.Supp. 124 (W.D.La.1962), *aff'd,* 309 F.2d 751 (5th Cir. 1962).

It is clear that "borrower" implies a less formal relationship than "lessee." Although this particular policy provision has received little attention by the courts, we have found two decisions which have construed the term and offer a definition which we find persuasive. *White v. Great American Insurance Co.,* 343 F.Supp. 1112 (M.D.Ala.1972); *Liberty Mutual Insurance Co. v. American Employees Insurance Co.,* 556 S.W.2d 242 (Tex.1977). In construing the precise policy provision currently under consideration, both courts defined a "borrower" as one who has temporary possession of the vehicle with the permission of the owner. The district court utilized this definition and we adopt it as well. It is not necessary that a borrower be able actually to operate the vehicle along the highways or streets; the policy provision quoted above specifically recognizes that permissive use of the insured vehicle may entail "actual operation or (if there is not [actual operation]) . . . or other actual use." It is sufficient that the borrower have both temporary possession and permission to unload.

Here, there is no dispute that A & P had the permission of Gulf to use the truck for the purpose of unloading. Furthermore, we agree with the district court that A & P had temporary possession of the truck during unloading. The evidence discloses that A & P had complete control over the loading process from the time that the Gulf truck came onto A & P's premises until A & P released the truck to the driver. In speaking of the truck, McDaniels testified that he "turned it over" to A & P to unload. A & P determined *where along the dock the truck would be unloaded,* who would unload it, what unloading equipment would be used, where the unloaded cargo would be placed on the dock, and *when to release the truck to the driver.* The sole means of unloading the truck was through the use of the electric forklift, which the A & P employee drove in and out of the truck at will. We believe that A & P's control over unloading operations shows sufficient dominion and control over the truck to support the conclusion that A & P had temporary possession of Gulf's truck during unloading. Thus, the present case is markedly different from the situation in *Liberty Mutual Insurance Co. v. American Employers Insurance Co.,* 556 S.W.2d 242 (Tex.1977). In *Liberty Mutual* the court concluded that the unloading party did not have possession of the truck because it never controlled the movements of the truck or entered the truck; in the present case, A & P instructed the incoming driver where to park the truck and maintained control over the truck until it was released to the driver at the end of unloading.[3]

---

**3.** None of the remaining cases cited by Ranger decided the precise issue confronting this Court. Nonetheless, we wish to distinguish one of these decisions, *Prudhomme v. Vancou-*

### III.

Next, Ranger contends that the trial court erred in failing to hold a separate trial on the issue of causality. McDaniel's theory of recovery against A & P was based upon two theories of liability. First, McDaniels argued that the A & P employee unloading the truck was negligent in failing to lower the forklift so that the cigarette boxes on top of the pallet would not strike the rear of the truck above the back door. Under this theory, A & P would be vicariously liable under the doctrine of *respondeat superior*. For his second theory of liability, McDaniels contended that A & P was *independently* liable in furnishing a defective dock plate[4] which contributed to the accident. Ranger maintains that A & P's *independent* acts of negligence are not covered under the omnibus clause of the automobile policy. Therefore, a separate trial is necessary in order to determine the exact cause of the accident.

■ We disagree. The Ranger policy does not distinguish between the vicarious and independent liability of an omnibus insured such as A & P. Since A & P was both a permissive user and borrower, the loading and unloading clause covers A & P's liability for "bodily injury or property damage arising out of the loading or unloading" of the insured vehicle. This quoted provision covers *any* liability, whether vicarious or independent, arising out of the unloading accident involved here.

We are not compelled to a different conclusion by the cases relied upon by Ranger. In each of those decisions, the automobile policies in question were not considered to cover the negligent acts complained of be-

cause they were too far removed from the loading or unloading process. By contrast, there can be no doubt in the present case that there is a sufficient connection between the negligence of A & P or its employee and the unloading process. Ranger's policy provides coverage for accidents "arising out of" loading or unloading. As this Court has held before, such words should be broadly construed.

'Arising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean ' "originating from," "having its origin in," "growing out of" or "flowing from," ' or in short, 'incident to, or having connection with,' the use of the [vehicle].

*Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.,* 189 F.2d 374, 378 (5th Cir. 1951). Whether the negligence causing McDaniel's injury was that of A & P's employee in operating the forklift or that of A & P in supplying a defective dock plate, it is beyond dispute that such negligence contributed to an injury "arising out of" the unloading process and is therefore covered by Ranger's policy. The trial court did not err in failing to conduct a separate trial on the issue of causality.[5]

### IV.

■ After the district court ruled that A & P was an insured under Ranger's policy, Ranger filed a third-party action against Aetna as A & P's general insurer. Although Aetna admitted in its answer that Ranger was entitled to recover part of the $170,000 from Aetna,[6] it argued that it should only be obligated to furnish a pro

---

ver *Plywood Co.,* 240 So.2d 587 (La.App.3d Cir. 1970), simply because it is the only Louisiana case cited. First, *Prudhomme* is factually distinguishable in that the truck in that case was in the sole possession of the driver at all times. Secondly, the court in *Prudhomme* never even considered whether the owner of the premises where the truck was unloaded was a "borrower." 240 So.2d at 589.

4.  A dock plate is a piece of metal which is used to bridge the gap between the dock and the unloading vehicle.

5.  Because we conclude that Ranger is not entitled to a separate trial on the issue of causality, we do not reach Ranger's further contention that it is entitled to a *jury* trial on the causality issue.

6.  There was no assertion by A & P of a claim against its employee nor does the record disclose any coverage extensions or reservations in either policy with respect to the negligent employee.

rata share of the settlement.[7] The district judge rejected this contention, finding that Ranger and Aetna should divide the cost of settlement evenly.

Apportionment of the loss between Ranger and Aetna is governed exclusively by the terms of their respective policies regarding other insurance. Both policies contain the exact same "other insurance" clause, which provides:

6. Other Insurance. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Aetna contends that subdivision (a) is inapplicable because there has not been an *unconditional promise* by either Aetna or Ranger to contribute equal shares. We cannot uphold this contention because subdivision (a)'s applicability does not depend upon such an unconditional promise. Nothing in subdivision (a) imports such a requirement. Subdivision (b), providing for contribution on a pro rata basis, does not become applicable unless the "other insurance does not provide for contribution by equal shares." In this case, both policies clearly *provide* for contribution by equal shares and neither policy provides a basis other than equal as the exclusive basis for computing contribution. The fact that the policy provides for an alternative method of apportioning the loss had there been no equal share provision in the other policy does not mean that neither policy had such an equal share provision in it. We refuse to construe the word "provide" to require an unconditional promise. Had that been intended, the draftsman could have introduced paragraph (b) with, "If any of such other insurance does not provide, unconditionally, for contribution by equal shares . . . ." When the words of an insurance policy are clear and explicit, a reviewing court may not alter their plain meaning. *Graves v. Traders & General Insurance Co.,* 252 La. 709, 214 So.2d 116 (1968). The construction urged by Ranger distorts the clear meaning of the policy provisions under consideration. We therefore uphold the district court's determination that Ranger and Aetna should contribute equal shares of the settlement.

AFFIRMED.

---

7. Ranger's policy limit was $500,000 while the limit of Aetna's liability was $100,000. Aetna therefore urged that Ranger was only entitled to recover one-sixth of the $170,000 settlement.