# BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK *v.* JOHN C. LOCKAMY ET AL.

[No. 738, September Term, 1981.]

*Decided February 8, 1982.*

The cause was argued before WILNER and MacDANIEL, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Joseph F. Lavin,* with whom was *Samuel S. Smalkin* on the brief, for appellant.

*Alva P. Weaver, III* and *David F. Clinnin for appellees* Procter and Gamble Manufacturing Company and Edward Glodek. Submitted by *Joel J. Shugarman* for appellee Lockamy.

WILNER, J., delivered the opinion of the Court.

The issue presented in this appeal is whether the Procter and Gamble Manufacturing Company (Procter & Gamble) was "borrowing" a trailer owned by National Freight, Inc. (National) when, as its employees were loading products onto the trailer, one of them negligently injured John Lockamy (Lockamy). Procter & Gamble's status is important because if we conclude that it was a "borrower" of the trailer at the time of the accident, appellant Bankers and Shippers Insurance Company of New York, which insured the trailer, is liable under its policy to pay for Lockamy's injuries; if we conclude otherwise, that liability would fall on other shoulders.

National regularly transported goods manufactured by Procter & Gamble. In the furtherance of that endeavor, National entered into an arrangement with Leonard White (White), who owned one or more tractors, whereby White agreed to pull National's trailers to and from Procter & Gamble's warehouse. Lockamy was employed by White as a helper.

On the morning of January 13, 1978, White drove his tractor, hauling National's trailer, to the Procter & Gamble warehouse to pick up a load of products. In accordance with

Procter & Gamble's standard procedure, he signed in at the scalehouse, had his empty vehicles weighed, and was directed to loading door no. 7 (one of twenty-eight loading doors). He backed the trailer up to that door, shut off the engine, checked the air pressure in his brake system, and placed "chocks" under the wheels in order to render the unit immobile. He presented his pick-up slip and scale ticket to the Procter & Gamble dispatcher who then directed Edward Glodek, another Procter & Gamble employee, to begin loading.

Glodek then began moving the product from the warehouse onto the trailer. He did this by loading boxes onto a clamp truck in the warehouse, driving the loaded clamp truck into the trailer, and depositing the boxes therein. National's driver or helper — in this case Lockamy — remained in the trailer and stacked the boxes deposited by Glodek.

The accident occurred after Lockamy had stacked seven loads. Glodek, entering the trailer with the eighth load, negligently struck Lockamy with the clamp truck.

Convinced that someone was responsible for his injuries, but unsure who, Lockamy filed an action for declaratory judgment in the Superior Court of Baltimore against (1) appellant, as insurer of the trailer, (2) Maryland Automobile Insurance Fund, as insurer of White's tractor, (3) Procter & Gamble, (4) on the theory that the clamp truck was a motor vehicle, Commercial Union Insurance Company, Procter & Gamble's motor vehicle insurer, and (5) Glodek, White, and National. Primarily, he sought a determination as to which defendant was responsible for payment of personal injury protection benefits (medical expenses and wage losses) required under Md. Code, art. 48A, § 539, although the action against Commercial Union apparently involved a claim for "uninsured motorist" coverage under art. 48A, § 541 (c).

Procter & Gamble cross-claimed against appellant, contending that, as a "borrower" of the trailer during the loading operation, it was entitled to coverage under the

"omnibus" clause of appellant's policy. The court agreed with that contention, declaring that (1) the clamp truck was not a motor vehicle designed for highway use, and (2) Lockamy was covered under appellant's policy.

In this appeal, which concerns only the second part of the declaration, appellant argues that the court erred in concluding that Procter & Gamble was a "borrower" of the trailer. We agree.

At issue here is the "omnibus" clause in appellant's policy, defining who is an "insured." The relevant language is as follows:

"II. *Persons Insured*

Each of the following is an insured under this insurance to the extent set forth below:

* * *

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, *but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:*

(1) a lessee *or borrower* of the automobile; or

(2) an employee of the named insured or of such lessee *or borrower.*" (Emphasis supplied.)

The more precise issue, of course, is the meaning of the word "borrower," as used in that clause. That would seem to be a matter easily resolved by resorting to one or more dictionaries; but in the context presented here, it is unfortunately a bit more complicated. A number of courts have considered the question and have come up with different answers.

It might help to start with some understanding of the history and purpose of the clause. In the distant past, motor

vehicle insurance policies often limited liability coverage to the person or persons named in the policy, and thus did not afford protection if an accident occurred while someone else was using the vehicle. The purpose of an "omnibus" clause was to extend that coverage by including as an additional person insured under the policy anyone using the insured vehicle with the permission of the "named insured." *See, in general,* 6C Appleman, *Insurance Law and Practice,* § 4353 (Buckley ed. 1979).

Liability coverage is based upon the operation or "use" of the insured vehicle, and it was not long before loading and unloading operations were deemed to be such a "use." *See, for example, American Oil Co. v. Hardware Mutual Casualty Co.,* 408 F.2d 1365 (1st Cir. 1969), and *Western Casualty and Surety Company v. Branon,* 463 F.Supp. 1208 (E.D.Ill. 1979). When coupled with the expanded coverage provided under the "omnibus" clause, that extension began to produce what one author called a "bewildering snarl of decisions." *See* 2 Long, *The Law of Liability Insurance,* § 6.15 (1966).[1] Eventually, the insurance industry began to place some limits on the "loading and unloading" coverage afforded through the "ominbus" clause. One form of limitation, which soon became fairly standard, is that appearing in the policy here: restricting the extended "ominbus" clause coverage during loading and unloading operations to "lessees and borrowers" of the insured vehicle.

At least two courts, in States having statutes precluding exceptions or conditions to "omnibus" clauses, have declared

---

1. The problem was often one of overlapping or conflicting coverages when one party loaded or unloaded a truck belonging to another. Among other things, questions arose as to (1) whether any accident occurring during such an operation was covered under the motor vehicle policy or whether some direct involvement of the vehicle was necessary; (2) the point at which the loading or unloading operation was considered to be ended; (3) whether an accident occurring after the loading or unloading had been completed was covered if it was caused by negligence in the loading or unloading operation. *See, for example, United States Fidelity & Guaranty Company v. Backus,* 243 Md. 121 (1966); *American Automobile Insurance Co. v. Master Building Supply and Lumber Co.,* 179 F.Supp. 699 (D.Md. 1959); *Employers' Liability Assurance Corp. v. Indemnity Insurance Co.,* 228 F.Supp. 896 (D.Md. 1964); 6B Appleman, *supra,* § 4322; 2 Long, *supra,* § 6.01 *et seq.;* Annot., *Risks Within "Loading and Unloading" Clause of Motor Vehicle Liability Insurance Policy,* 95 A.L.R.2d 1122, *et seq.* (1964).

those limitations to be contrary to public policy and therefore invalid. *See Mission Insurance Co. v. Aid Insurance Services,* 585 P.2d 240 (Ariz. 1978), and *Bellafronte v. General Motors Corp.,* 376 A.2d 1294 (N.J.Super.), *cert. den.* 384 A.2d 513 (N.J. 1977), *but compare Breen v. Cunard Lines Steamship Company, Limited,* 311 N.E.2d 478 (N.Y. 1974). No one has raised the public policy issue in this case or pointed to any provision of Maryland law that might serve to invalidate the conditions, so we have no occasion to address that question.[2] We deal only with the construction of the language — the word "borrower" — in light of the facts noted; but we do so with the understanding that the language at issue represents (and was intended to represent) a limitation on insurance coverage that, by contract, custom, and judicial construction, previously existed.

As we have noted, a number of courts have considered the issue now before us, and have arrived at different answers. There are, essentially, three lines of cases.

The first line began with *White v. Great American Insurance Co.,* 343 F.Supp. 1112 (M.D.Ala. 1972). The court's opinion is not distinguished by its clarity, but apparently what occurred was this: Great American insured a truck owned by Arrow Truck Lines under a policy similar to that issued by appellant here. One Neely, a driver employed by Arrow, drove the Arrow truck to the warehouse of Union Camp Corporation to pick up a load of merchandise. During the loading operation, Neely was injured through the negligence of two of Union Camp's employees. Union Camp's general liability insurer, Liberty Mutual, paid Neely's claim and, as subrogee, sought reimbursement from Great American.

Among the many defenses raised by Great American to that action was the one raised here — that Union Camp was neither a lessee nor a borrower of the vehicle during the

---

**2.** The policy in question became effective January 1, 1978, for a three-year term ending January 1, 1981. It was issued either in New Jersey or in North Carolina (different parts of the policy say different things in that regard). We have discovered that in May, 1979, the policy was approved by the Insurance Commissioner in Maryland, and we shall therefore accord it a presumptive validity.

loading operation. Without a great deal of discussion, the court rejected that defense, noting at 343 F.Supp. 1117:

> "The truck, at the time of the accident, *was in the possession of Union Camp* for purposes of loading the consignment. It is of no consequence that the carrier's compensation paid Arrow by Union may have included rent for the truck while Union was loading it or that the use of the truck by Union during loading may have been a gratis loan to Union by Arrow. Permission by Arrow to load is obvious." (Emphasis supplied.)

The court made no attempt to define the word "borrower" in any generic sense, but rather concluded that Great American was liable primarily on the basis of its finding that, at the time of the loading operation, the truck was in Union Camp's possession. That made it a "borrower." [3]

Following the decision in *White,* the Texas courts commenced a second line of reasoning. It started with *Gary Safe Company v. Transport Insurance Co.,* 525 S.W.2d 64 (Tex.Civ.App. 1975), which involved an action against the shipper of goods by reason of an accident occurring during an unloading operation at the end of the journey. The court distinguished *White,* where, it noted, "the truck was in the possession of [the shipper] for purposes of loading the consignment and was actually in the process of being loaded by [the shipper's] employees at the time of the accident." *Id.* at 67. The *Gary* court declined to consider the *shipper* (Gary Safe Co.) as being the borrower of the truck at the time of *unloading,* when it had neither possession nor control and was in no way responsible for the accident.

The second case considered by the Texas courts also involved an accident occurring during an unloading, but there it was the consignee, whose negligent employees

---

**3.** In another part of the opinion (343 F.Supp. 1119), the court again held that "[a]t the time of the accident, the truck was in the possession of Union Camp for purposes of loading the consignment. Union Camp was paying Arrow for delivery of the consignment. The truck was either leased or borrowed for the purpose of loading."

caused the accident, who sought to be covered as a "borrower." The facts were these: Dragoo, an employee of U.S. Plywood, delivered a load of plywood decking to Homette. He drove a tractor-trailer owned by U.S. Plywood and insured by Liberty Mutual. After parking the vehicle at Homette's plant, Dragoo removed the nylon webbing securing the stacks of decking and then stood along the opposite side of the truck as Homette employees began unloading the decking with forklift trucks. He did nothing more to assist in the unloading. As he was rolling up the webbing that had been used to contain the decking, several sheets of decking fell on him and killed him.

Prompted by a suit filed by Dragoo's widow, Homette's liability carrier, American Employers Insurance Co., sought a declaratory judgment that Homette had been a "borrower" of the truck at the time of the accident and that Liberty Mutual was therefore responsible. The trial court found for American Employers as did the court of civil appeals. *See Liberty Mutual Insurance Co. v. American Employers Insurance Co.,* 545 S.W.2d 216 (Tex.Civ.App. 1976). The intermediate appellate court concluded that "the term 'borrower' as applied to the facts in the case at bar means someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes." *Id.* at 222-23. It then held that "Homette had, with the owner's permission, the temporary possession of the truck for unloading purposes, and is an additional insured under the policy." *Id.* at 223.

The Supreme Court of Texas reversed. *Liberty Mutual Insurance Co. v. American Employers Insurance Co.,* 556 S.W.2d 242 (Tex. 1977). The crux of its decision was "[a]lthough we agree with the court of civil appeals' general definition of 'borrower,' we do not agree that Homette falls within it because these [*sic,* there] is no evidence that Homette had possession of the truck and trailer rig." *Id.* at 244. In that regard, the court noted that Homette's employees never moved the truck or instructed Dragoo to move the truck from one location to another and that there

was no evidence as to who had the keys during the unloading operation. It observed (p. 245):

"The only evidence in the record is the statement by the sales manager of U.S. Plywood that Homette had express or implied permission to unload the decking. It is impossible to conclude from this statement that Homette had sufficient possession to be a 'borrower.' The only contact Homette's employees had with the truck was to drive up to it with forklifts and remove the decking. If, as American argues, this was enough to bring Homette within the policy, the 'borrower' requirement would be meaningless because one would need only to be an unloader to also be a 'borrower.' "

The Court declined to accept that premise:

"While unloading is a 'use' of the vehicle, the conjunction 'and' in the definition of 'borrower' [given by the intermediate court] indicates that one must also have possession of the vehicle to be a 'borrower.' *Possession connotes the right to exercise dominion and control over the truck and trailer.* There is no evidence that Homette had this right." (*Id.* at 245; emphasis supplied.)

The Court then cited the *White* case and a favorable reference to it in *Gary Safe Co., supra,* but noted, correctly, that in neither case "did the court explain the basis for its conclusion that an unloader was a 'borrower.' " *Id.* at 245.

The *Liberty Mutual* case naturally established the law in Texas (*see Atlantic Mutual Insurance Co. v. Gulf Insurance Co.,* 596 S.W.2d 326 (Tex.Civ.App. 1980); *Robinson v. Excalibur Insurance Co.,* 598 S.W.2d 324 (Tex.Civ.App. 1980); but it has been followed as well in Illinois and Indiana. *See United States Fidelity and Guaranty Co. v. Federal Insurance Co.,* 399 N.E.2d 259 (Ill.App. 1979); *Protective Insurance Co. v. Coca-Cola Bottling Co.,* 423 N.E.2d 656 (Ind.App. 1981).

The first line, started in *White,* was strengthened and followed by the Fifth Circuit Court of Appeals in *McDaniels v. Great Atlantic & Pacific Tea Co.,* 602 F.2d 78 (5th Cir. 1979). That, too, involved an unloading operation. McDaniels, driving a truck owned by Gulf Atlantic Warehouse Co., delivered a load of cigarettes to an A & P warehouse. He backed the truck up to the unloading dock, whereupon A & P employees, using forklift trucks, began unloading the pallets from the truck. This was done by driving the forklift into the truck, lifting a pallet, backing out, and depositing the pallet on the loading dock. During this operation, McDaniels was injured when, in assisting an A & P employee to remove a pallet from the truck, some boxes fell off the pallet and hit him.

As a result of the accident, Ranger Insurance Co., Gulf Atlantic's workmen's compensation carrier, paid benefits to McDaniels and then sued A & P to recover them. A & P cross-claimed, arguing that Ranger also had issued a motor vehicle liability policy on Gulf Atlantic's truck, and that under the "omnibus" clause therein, it was a "borrower" of the truck during the unloading operation. The language in that policy was the same as that at issue here.

The Court of Appeals affirmed a judgment for A & P, finding that it was a "borrower," and thus was covered as an insured under the Ranger policy. In doing so, it accepted the definition of "borrower" given in both *White* and *Liberty Mutual* — "one who has temporary possession of the vehicle with the permission of the owner." 602 F.2d at 81. It noted, however (also at p. 81):

> "It is not necessary that a borrower be able actually to operate the vehicle along the highways or streets; the policy provision [at issue] specifically recognizes that permissive use of the insured vehicle may entail 'actual operation or (if there is not [actual operation]) . . . or other actual use.' [4] *It is*

---

4. This refers to the first part of the "omnibus" clause: "Any other person while using an owned automobile or a hired automobile with the permission of the named insured, *provided his actual operation or (if he is not*

*sufficient that the borrower have both temporary possession and permission to unload."* (Emphasis supplied.)

Permission to unload was never in dispute, and the Court had no difficulty finding that A & P had temporary possession of the truck:

"The evidence discloses that A & P had complete control over the loading process from the time that the Gulf truck came into A & P's premises until A & P released the truck to the driver.... A & P determined *where along the dock the truck would be unloaded,* who would unload it, what unloading equipment would be used, where the unloaded cargo would be placed on the dock, and *when to release the truck to the driver.* [Emphasis in the original.] The sole means of unloading the truck was through the use of the electric forklift, which the A & P employee drove in and out of the truck at will. *We believe that A & P's control over unloading operations shows sufficient dominion and control over the truck to support the conclusion that A & P had temporary possession of Gulf's truck during unloading." Id.* at 81. (Emphasis supplied.)

The Court distinguished *Liberty Mutual* on the basis that "the unloading party did not have possession of the truck because it never controlled the movements of the truck or entered the truck; [5] in the present case, A & P instructed the incoming driver where to park the truck and maintained control over the truck until it was released to the driver at the end of unloading." *Id.* at 81. (Footnote omitted.)

Both lines of cases purport to rest upon the same underlying concept of "borrowing," and to a large degree the

---

*operating) his other actual use thereof* is within the scope of such permission, . . . ." (Emphasis supplied.)

**5.** The facts recited in *Liberty Mutual* indicate that Homette employees *did* enter the truck with their forklifts. Indeed, as noted, Homette was in complete control of the unloading operation.

distinctions drawn are somewhat technical: How much control over the operation must the loader or unloader have before he will be deemed to have temporary possession of the vehicle? This is illustrated in *Protective Insurance Co. v. Coca-Cola Bottling Co., supra,* 423 N.E.2d 656. There, a driver, in his tractor, hauled a load of Coca Cola products in a trailer belonging to Coca Cola to a Coca Cola warehouse. He positioned the trailer where the Coca Cola dispatcher directed him and was in the process of uncoupling the trailer when, due to the alleged negligence of Coca Cola, he was killed.

The Indiana court rejected the argument that Coca Cola was a "borrower" of the vehicle. It accepted the Texas definition of the term, concluding that to be a "borrower", a person "must have possession of the vehicle, possession connoting the right to exercise dominion and control over the vehicle." *Id.* at 660. It further concluded, however, that "[g]eneral supervision or even the actual performance of loading or unloading operations will not make one a borrower of the vehicle involved; there must be evidence of possession." *Id. White* and *McDaniels* were distinguished on the basis that, in the case at bar, Coca Cola employees were not participating in the uncoupling. *See also F & M Schaefer Brewing Co. v. Forbes Food Division, Chemical Leaman Tank Lines, Inc.,* 376 A.2d 1282 (N.J.Super. 1977).

A third line of cases, based on essentially the same theory but with added stress on the question of who is benefiting from the operation, arose out of New York. In *Broome County Co-Operative Fire Insurance Co. v. Aetna Life and Casualty Co.,* 347 N.Y.S.2d 778 (1973), a *nisi prius* decision, the court stated, at p. 784:

> "A 'borrower' of an automobile has been described as one who 'uses the car for his own business or pleasure, and not for any purpose in which the owner is interested.' [citation omitted.] In common everyday language the term 'borrower' is generally understood to mean someone who has, with the permission of the owner, possession and use of the property of another for his own purposes."

The case involved a private automobile in which Pilcher was driving her friend Miller, a cripple, in Miller's car. Miller in a wheelchair, was injured while alighting from the vehicle. Though accepting that the accident occurred while Miller was being "unloaded," the court concluded that Pilcher was not a "borrower" since she was using the car for Miller's benefit rather than her own.

The Alabama court adopted somewhat the same approach in *Sentry Insurance Co. v. Pacific Indemnity Co.,* 345 So.2d 283 (Ala. 1977). There, K & K sent its truck and driver to McWane, a supplier, to pick up a load of pipe. The driver parked the truck at McWane's dock, and McWane's employees loaded the pipe. On the return trip, the driver was killed when the pipes slammed into the cab, which, it was alleged, occurred because McWane was negligent in its loading of the pipe. The court adopted the reasoning of *Broome County Co-Operative Fire Ins. Co.,* and found that McWane was not a borrower of the truck because it did not have possession of the truck "for its own purposes." *Id.* at 287.

We thus have, with the first two lines of cases, a consensus on the underlying definition of "borrower" — one who has both permissive use and temporary possession of the vehicle — but somewhat of a divergence on what it takes to find the critical element of possession. The third line, so far involving less analogous fact situations, stresses the criterion mentioned but not emphasized in *Liberty Mutual* that the use of the vehicle be for the "borrower's" benefit.

We are impressed with the Texas approach and think it is more in accord with both the purpose of the limiting language and the normal acceptance of the word "borrower." *See also Breen v. Cunard Lines Steamship Company, Limited, supra,* 311 N.E.2d 478. We are perhaps more inclined to look to the general meaning of the word than are some other courts because Maryland does not follow the rule of construction applied in other States that language in an insurance policy is necessarily to be construed against the insurer and in favor of the insured. In Maryland, words used

in insurance contracts are given their "customary and normal meanings." *See Government Employees Insurance Co. v. DeJames,* 256 Md. 717 (1970); *C & H Plumbing and Heating, Inc. v. Employers Mutual Casualty Company,* 264 Md. 510 (1972); *National Grange Mutual Insurance Company v. Pinkney,* 284 Md. 694 (1979).

The *White-McDaniels* courts, we think, have given undue importance to the loader's (or unloader's) control over its own premises and the operations conducted on it in deciding who has possession of the truck. A company has good reason to exercise some control over vehicles (and persons) coming onto its property — checking them in, directing their movements, checking them out; but that does not necessarily translate into a "borrowing" of the vehicles any more than it translates into a "borrowing" of the personnel. Procter & Gamble hired National's trailer to haul goods to its customers, and that involved loading the trailer. To conclude that the shipper has "borrowed" the truck during the loading operation because it establishes and implements minimal safety, security, and operational requirements — checking the truck in, telling the driver which dock to report to, requiring that the truck be in a secure stationary position prior to and during the actual loading, and having its employees bring the products from the warehouse and place them in the truck — is to stretch the meaning of the word "borrow" well beyond its ordinary signification. If such temporary control over the truck as an incident of the shipper's control over his own premises and operations is to constitute sufficient possession of the vehicle to make it a borrower thereof, we would soon have a situation in which either (1) virtually every loader and unloader would be a borrower, thus giving little or no meaning to the condition placed in the policy in order to limit coverage, or (2) the distinctions required to be drawn between who is and who is not a borrower would defy rational explanation.

It is imperative that there be some certainty in this area of the law. No two loading operations are precisely the same. As the cases indicate, they vary from plant to plant and from

company to company, based no doubt on the layout of the loading area, applicable personnel rules and collective bargaining agreements, the contract with the carrier, and a host of other factors. Yet, the parties and their insurers must be able to know who is going to be responsible for injuries occurring during these operations.

To continue to draw the fine distinctions recited in the aforecited cases serves no useful purpose. We accept the basic definitional criterion for determining who is a "borrower" — permissive possession and use of the vehicle for the benefit of the "borrower" — but we do not find that criterion to be satisfied merely by controlling a temporary and on-going loading or unloading operation as part of a consignor or consignee maintaining control over its loading dock. That is all that is revealed in this record, and it is not enough.

> *Judgment construing appellant's policy reversed; case remanded for declaration that appellant is not liable to defend action by Lockamy or to pay judgment resulting therefrom; appellees to pay the costs.*